## E. K. Bonds & Company, et al. v. Ford.

(Decided May 29, 1917.)

### Appeal from McCracken Circuit Court.

1. **Licenses—Verbal License to Use or Encumber Real Property—Revocation of.**—Where the owner of a building grants verbal permission, without consideration and unlimited as to time, to an adjacent owner to make a physical connection with his building, the owner of the building, after the licensee, on the faith of the permission, has expended money in making the contemplated improvement, will not be allowed to revoke the license to the injury of the licensee.

2. **Licenses—Verbal License to Use or Encumber Real Property—Revocation of.**—But where the original licensee conveys the building that he has erected on the faith of a verbal license, or parts with real property on which he has expended money on the faith of a verbal license, the licensor, unless he has by act or conduct estopped himself from so doing, may, as against the vendee of the licensee, revoke the license without having or giving any reason therefor, after reasonable notice to the vendee, and if the vendee, after such notice, refuses to remove the building or property, the licensor may do so himself.

3. **Licenses—Notice to Intended Purchaser From Licensor of Condition of Privilege—Effect of.**—If an intended purchaser from a licensor should find connected with a building he was about to purchase another building not covered by the title of his vendor, or should find on the premises he was about to buy some encumbrance that did not belong to his vendor, and should complete his purchase without making inquiry, he would not be in any better position than his vendor, or permitted to do anything that his vendor could not do.

   **Licenses—Notice to Purchaser From Licensee of Condition of Encumbrance on Property of Another.**—Where the purchaser from the licensee has information sufficient to put a person of ordinary prudence on notice that his vendor is selling him something not covered by his title, and he fails to make such inquiry as would put him in possession of the facts necessary to enable him to protect his rights before making the purchase, the licensor will not be estopped to revoke as against him the license, unless he does something to mislead or deceive him.

5.  Notice—When Sufficient to Put Purchaser of Real Property on
    Inquiry.—If a purchaser dealing with property, the record title
    of which appears to be complete, has information of extraneous
    facts sufficient to put him on inquiry respecting some outstand-
    ing interest, claim or right, and he omits to make' proper inquiry,
    he will be charged with constructive notice of all the facts which
    he might have learned by means of reasonable inquiry.

JOHN K. HENDRICK for appellants.

CLAY & REED for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Thomas H. Clayton owned a brick store building in Paducah, Ky., which was leased to and occupied by E. K. Bonds & Company. C. C. Davis owned and operated a bakery adjoining this building, and desiring to erect a bake oven in the rear of his bakery, and adjoining the west partition wall of the building occupied by E. K. Bonds & Company, he obtained verbal permission in May, 1915, from Clayton, the owner of the building, and soon afterwards from Barrett, the manager of E. K. Bonds & Company, to insert eight iron rods through this wall for the purpose of supporting the bake oven that he was about to erect. These iron rods were held in place by braces on the inside of the building occupied by Bonds & Company.

After the bake oven had been constructed and the iron rods supporting the oven had been put through the wall of the building occupied by Bonds & Company and fastened on the inside of the wall to keep them from pulling out, and it had been in use for a short while, Davis sold the oven to Ford, who continued to operate it. A short while after the oven had been in operation and before it was sold to Ford, Barrett, the manager of Bonds & Company, discovered that the oven was heating the inside of the building to such an extent as to not only injure the building, but the goods, wares and merchandise which were stored in the building. Before Ford purchased the oven he was notified that the rods must be removed, and after the purchase of the oven by Ford he was notified on several separate occasions to remove the rods from the wall, but he failed to do so. After waiting a reasonable time for Ford to remove the rods and disconnect the bake oven from the building, Barrett took off the fastenings on the inside of the building that held the rods in place, and when he did this the rods pulled out

and the bake oven fell down in such a way as to be entirely unfit for use. Thereafter Ford brought this suit against E. K. Bonds & Company and Barrett to recover damages for the loss he sustained on account of their alleged wrongful acts in removing the rods, thereby causing the bake oven to collapse and fall down; and Bonds & Company in their answer set up a counter-claim for damages.

On a trial of the case before a jury there was a verdict and judgment for Ford, and E. K. Bonds & Company and Barrett appeal.

There is no serious dispute concerning the essential facts in the case, and they may be summarized as follows: (a) The rods were inserted in the wall of the building under a verbal permission from the owner and lessee of the building, which was given to Davis, the vendor of Ford, without consideration of any kind paid or agreed to be paid; (b) the permission was given as a mere act of accommodation on the part of the owner and lessee of the building, and there was no limitation fixed as to the time the rods should remain in the building or anything said about this, nor does it appear that the owner or lessee of the building at the time they gave their permission had any belief or information that the connection of the bake oven by the rods through the wall would heat the wall of the building or in any way interfere with its use; (c) that a short while after the bake oven had been in operation the owner and lessee of the building discovered that the heat from the bake oven was not only injuring the wall of the building, but was interfering with the use of the interior of the building next to the wall where the rods were inserted, for the purposes for which it was being used; (d) that the lessee of the building some time in July, 1915, and on several other occasions subsequent thereto, and before January, 1916, informed Ford that the bake oven was injuring the wall of the building and interfering with its use, and notified him to disconnect his bake oven from the wall by removing the iron rods, to which notices he paid no attention; (e) that at the time some of these notices, if not all, were given to Ford he was further notified that if he did not disconnect his bake oven from the wall by removing the rods, the lessee would take the rods out; (f) that after waiting for a reasonable time, indeed, several months, for Ford to disconnect his bake oven from the wall by taking out the rods, the lessee of the building

took the fastenings on the inside of his building off the rods, and when this was done the rods pulled out of the wall, with the result that the bake oven fell down and became totally unfit for use; (g) that Ford before he purchased the oven had notice that the rods must be removed from the building.

On this evidence the trial court instructed the jury that if they believed from the evidence that "the defendant agreed or consented that said iron rods supporting said oven might be put or run through said partition wall and that by reason of and on account of said agreement or consent of defendants, said rods were put through and fastened to said wall, and said oven supported thereby, and shall further believe from the evidence that defendant at the time complained of by plaintiff tore said iron rods out of said partition wall and thereby caused said oven to collapse and become destroyed or injured, then the law is for the plaintiff and you will so find."

Counsel for the defendants, Bonds & Company and Barrett, asked the court to instruct the jury that "if the jury believe from the evidence that the furnace of the plaintiff heated the wall of the defendant to such an extent as to injure or damage it, or heated the said wall and building occupied by the defendants to such an extent that they, the defendants, were deprived of the use of any part of their building, or that the steel braces securing or holding the iron rods on the side of the wall of the room occupied by the defendants, protruded to such an extent as to interfere, materially, with the use of said wall or room, or that the said furnace so heated the room occupied by them to such an extent as to damage the potatoes, apples, hay or product kept in said building by the said defendants, then and in that event the defendants had the right to notify the plaintiff of such condition and to request the removal of said rods, and if the plaintiff failed within a reasonable time to disconnect said furnace from the building occupied by defendants, they, the defendants, had the right to use reasonable means to protect their property, even to the removal of said rods and the disconnecting of said furnace from its said walls, and if they believe from the evidence that the defendants did remove said rods under the circumstances herein indicated and used reasonable care in so doing, then the law is for the defendants and the jury will so find." But this instruction was refused.

Under the evidence and the instruction given by the court there was really nothing for the jury to do except to ascertain the damage that Ford had sustained, as there was practically no dispute as to the other issues in the case.

On this appeal several grounds for reversal are relied on, but in the view we have of the law applicable to the case, it is only necessary that we should consider whether the court erred in giving the instruction he did give and in refusing the instruction that was offered.

In Jarvis v. Satterwhite, 3 Ky. L. R. 190, it appears from the opinion that Satterwhite, desiring to erect a building on his lot adjoining the lot of Jarvis, obtained the verbal consent of Jarvis to permit the cornice on the proposed building to overhang the ground of Jarvis. After obtaining this permission Satterwhite erected the building with the overhanging cornice, and thereafter Jarvis brought suit to require Satterwhite to remove the cornice. In holding that Jarvis was not entitled to the relief sought, the court said:

"The party here, relying on the consent of the appellant, has erected a building at considerable cost, and to alter the plan, or reconstruct the building, would necessitate an additional expense, originating alone from the attempt on the part of appellant to revoke the license, or permission, to construct the house in accordance with the plan shown him. It is too late to recall his action in the premises after the expenditure has been incurred.

"It seems to us the only question in this case is, did the appellant consent that the cornice might be constructed so as to overhang his lot? If so, the case is for the appellee. It is not an easement that the appellee is asserting, but on the contrary a license to erect his house, or a part of it, on appellant's land, and whether there was a consideration or not passing to the appellant is immaterial. The building was constructed, and the expenditure made, on the faith of the promise given, and that fact being established by a preponderance of the testimony, the appellant is estopped by his own act; as in the case of an easement where the grant is by parol, if the party entering has expended money in the way of improvements that must be entirely lost, if the grant is revoked, the chancellor will not interfere at the instance of the owner. . . .

"If this was an action to enforce an agreement on the part of the appellant showing his consent in parol, the

doctrine contended for by him would apply, or if a parol
license had been given and an entry made under it, and no
expenditures incurred, or where the parties could be
placed in *statu quo,* the chancellor would grant relief, but
in this class of cases the chancellor will not, and ought
not, to interfere at the instance of one who has induced
another to build on his land, and when, to remove the
building, or change the plan, would incur a useless ex-
penditure of money to gratify one whose breach of faith
is the prime cause for seeking the interposition of the
chancellor.'' To the same effect is Dillion v. Crook, 11
Bush 321.

In Levy v. Louisville Gunning System, 121 Ky. 510,
Heissman, the owner of a business house in Louisville,
granted in a written contract the right to the ''2 Jakes
Sign Company'' to use one wall of the building for adver-
tising purposes for one year with an option for four years
in addition, for which privilege the lessee was to pay a
stipulated annual consideration.  After this, and during
the life of the lease, the ''2 Jakes Sign Company'' as-
signed their right to the use of the wall to the Louisville
Gunning System, and thereafter it secured for a valuable
consideration the right to use the wall for advertising
purposes.  After making this lease with the Louisville
Gunning System Heissman leased the building to Ehr-
man, who sub-let it to Levy, and Levy, while the lease of
the Gunning System was in force, obliterated the signs
that the Gunning System had placed on the walls of the
building under its contract right with Heissman so to do.
Thereupon the Gunning System obliterated the sign
which had been put on the wall by Levy and repainted
the sign it had on the wall.  Levy then brought suit
against the Louisville Gunning System to enjoin it from
interfering with his sign or from using the wall for adver-
tising purposes.  The lower court dismissed the suit of
Levy and he appealed.  In the course of the opinion af-
firming the judgment the court said:

''The form of the writing, the use therein of such
words as 'lease' and 'rent,' the fact that it is for a definite
period and a recited consideration; that it provides for
an abatement of rent in case of an obstruction of the wall
by other buildings, also for 'necessary access through
and upon the premises' by appellee, and that 'the lessor
warrants the title to said leasehold for the term herein
mentioned,' demonstrate that the writing was intended
as a lease.  But, whether it be entitled a lease or license,

it is not revocable at the will of the lessor. The right it confers is in the nature of an easement as well as a license, and a written contract for an easement in real property, founded upon a consideration and executed by the owner, gives a greater right than a mere revocable license. We do not think the fact that the privilege granted appellee by this writing was not reserved or mentioned in the writing by which the property was subsequently leased by the owner to appellant's assignor, Ehrman, amounted to a revocation. Upon the other hand, the fact that it was not mentioned in the lease to Ehrman furnishes some evidence that it was not the intention of the lessor to revoke it. . . .

"We think the great weight of authority is to the effect that under most circumstances a naked license may be revoked at the pleasure of the licensor, but an executed license for a term and for a consideration cannot be revoked; and the proof fails to show that even an attempt to revoke the license to appellee has been made by the licensor in this case. We do not find that the authorities relied on by counsel for appellant, which declare a mere license may be revoked at any time, hold such an instrument as that relied on by appellee revocable at the will of the licensor."

These are the only Kentucky cases on the subject that we have been able to find and in all of them the facts are so very different from the facts of this case that we do not think they are controlling authority for the views of the trial judge as expressed in the instruction given. It is manifest from the instruction that the trial judge was of the opinion that a verbal license without consideration or limit as to time could not be revoked by the licensor, even as against a purchaser from the licensee, after the licensee, on the faith of the license, had erected improvements that would be seriously or permanently damaged by the revocation of the license and the removal of the physical things that were done under it.

If there had been no sale of the bake oven by Davis, the original licensee, to Ford, and Davis had continued to be the owner of it, the Jarvis case and the Dillion case would furnish ample authority in support of the proposition that the license was irrevocable. It should, however, be here remarked that these opinions, although supported by considerable authority from other jurisdictions, are not in harmony with the prevailing rule on the subject, which is that a verbal license respecting real prop-

erty, that is without consideration and unlimited as to time, may be revoked by the licensor upon reasonable notice to the licensee. Thus it is said in 18 A. & E. Ency. of Law, second edition, 1146:

"According to the prevailing view of the courts in England and a large number of the courts of the states of the United States, however, neither the execution of the license nor the incurring of expense, nor both combined, affect the right of the licensor, and he may revoke under all circumstances. It is held that the statute of frauds prevents any act other than the giving of a deed from vesting an irrevocable interest in land."

And in 25 Cyc. 647: "According to the better opinion, however, where nothing more than a mere oral license appears, it is revocable at the will of the licensor, whatever expenditures the licensee may have made, provided the licensee has reasonable notice and opportunity to remove his fixtures and improvements. To hold otherwise would be to override the statute of frauds and convert an executed license into an estate in land, which is going a greater length than equity ever went under the doctrine of part performance; nor does the case involve any matter of estoppel *in pais* against. the licensor or render him liable to an action for damages."

In 49 L. R. A. 497, there is an extensive note to the case of Pifer v. Brown, 43 W. Va. 412, and in summing up the result of the investigation of the cases the editor said: "The conclusion from the cases and the principles involved is that a parol license can never impose an irrevocable burden on land, because as soon as the burden is established it becomes an estate or an easement which is an interest of a higher grade than a license. That an easement can only be created by deed, and an agreement for an estate must be in writing under the statute of frauds. That the only equitable relief must be on the basis of a distinct promise for a definite interest, express or implied, forming part of a contract which may be enforced specifically. That estoppel can not avail because fraud is a necessary ingredient of an estoppel, and there can be no fraud in permitting one to make expenditures which the licensor has a right to assume are made in contemplation of the unstable character of the title under the statute of frauds, for considerations satisfactory to the licensee. The majority of the cases accord with these principles, although many contain *dicta* at variance with them."

These views are supported by Hicks v. Swift Creek Mill Co., 133 Ala. 411, 91 Am. St. Rep. 38; Hodgkins v. Farrington, 150 Mass. 19, 15 Am. St. Rep. 168; Pitzman v. Boyce, 111 Mo. 387, 33 Am. St. Rep. 536; Rodefer v. Pittsburg, etc. R. R. Co., 72 Ohio St. 272, 70 L. R. A. 844; Clute v. Carr, 20 Wis. 531, 91 Am. Dec. 442; Pifer v. Brown, 43 W. Va. 412, 49 L. R. A. 497; Ewing v. Rhea, 37 Oregon 583, 52 L. R. A. 140, and Yeager v. Tuning, 79 Ohio 121, 19 L. R. A. (N. S.) 700, and many other cases.

In view, however, of the irreconcilable conflict in the authorities on this subject and the position this court has heretofore taken, that a parol license upon the faith of which expenditure has been made by the licensee, is not revocable by the licensor, we will not assume to overrule the case of Jarvis v. Satterwhite, *supra*. It is not necessary to go that far as this case may be distinguished from that upon the ground that Ford occupied the attitude of a purchaser from Davis, to whom the license was granted, and, besides, had notice, as there is evidence tending to show, that the license to Davis would be revoked before he purchased the oven. So that Ford, looking at the matter from any standpoint, does not occupy the favorable attitude that Davis would have occupied if he had continued to remain the owner of the bake oven, or the same position as would a person who on the faith of direct permission from the licensor had expended money in doing the things the license gave him the permission to do.

We are also of the opinion that when the original licensee conveys the building that he has erected on the faith of a verbal license, or parts with real property on which he has expended money on the faith of a verbal license, the licensor, unless he has by act or conduct estopped himself from so doing, may as against the vendee revoke the license without having or giving any reason therefor, after reasonable notice to the vendee, and if after such reasonable notice the vendee refuses to remove the building or property, whatever it may be, the licensor may, in the exercise of reasonable care, remove it himself without being subjected to damages on account of what he has done, although the purchaser may not have had notice before his purchase that the license would be revoked. We do not, however, mean to say that a state of facts might not exist in some cases that would estop the licensor from revoking the license

as against a purchaser, although we have no such state of facts here, as it is conceded that Ford did not enter into any arrangements with the owner or lessee of the building that would estop them from revoking the license as against him.

The owner of property might be willing as a matter of accommodation and without consideration to grant to one person the right to invade his premises or to erect a building thereon, or to make some connection with his existing buildings, when he would not have made any arrangements of this kind with any other person, and it would be a hard case if the licensor under circumstances like these would be irrevocably estopped from revoking the license when the privilege had fallen into the hands of a person to whom he had not granted it and to whom he probably would not have granted it. Take for example this case. The owner and lessee of this building, as a matter of accommodation to Davis, and without any consideration passing from him, were willing that he should connect his bake oven with their building. But they might not have been willing to grant this same privilege without consideration to Ford, or at all, and yet if Ford takes the place of Davis, the owner and lessee of the building find themselves irrevocably bound by the grant of an unlimited privilege to a person to whom they would not voluntarily have granted any privilege.

The rule we have announced will work no hardship on the purchaser, because a purchaser could not help but take notice that his vendor was selling him property or privileges to which he had no title. The mere fact that his vendor was conveying to him something to which he had no record title, should have been sufficient to put him on notice and cause him to make inquiry as to the status of the title or the conditions under which his vendor was holding the property or privilege that he was undertaking to convey.

In Pomeroy's Equity Jurisprudence, vol. 2, 3rd ed., sec. 613, it is said: "If a purchaser or encumbrancer dealing with property of which the record title appears to be complete and perfect, has information of extraneous facts or matters in pais sufficient to put him on inquiry respecting some unrecorded conveyance, mortgage or encumbrance, or respecting some outstanding interest, claim or right which is not the subject of record,

and he omits to make proper inquiry, he will be charged with constructive notice of all the facts which he might have learned by means of a due and reasonable inquiry.''

And so if an intended purchaser from the licensor should find connected with the building he is about to purchase another building not covered by the title of his vendor, or should find on the premises he was about to buy some encumbrance that did not belong to his vendor and should complete his purchase without making inquiry, he might not be in any better position than his vendor, or permitted to do anything that his vendor could not do. For example, if the owner of the building occupied by Bonds & Company had sold it, the purchaser would be charged with notice that the bake oven was connected with the building and would be bound before completing his purchase to take such action as he saw proper to take respecting this encumbrance on the property, or otherwise be thereafter estopped to revoke the privilege. If he purchased it without making any question as to the encumbrance, it might well be said that he would occupy the same position as his vendor did, and if his vendor could not remove the encumbrance, neither could he. This is a necessary result of the equitable principles of estoppel laid down in the Jarvis case, and admitting this principle to be sound, we see no reason why it should not be applied to a purchaser from the licensee such as Ford was.

If we should admit for the sake of argument that Ford, before he purchased the property, had no actual notice from the owner or lessee of the building that the connection was undesirable and must be removed, he was, nevertheless, put on notice by the physical facts plainly appearing that Davis had connected the bake oven with a building he did not own, and this in itself was sufficient to put Ford upon inquiry, and if he had made inquiry before his purchase, as a reasonably prudent man should have done, he could easily have ascertained the exact condition under which the license had been granted, and the further fact that it was not agreeable to the owner and lessee of the building that the privilege should continue.

Ford was not induced, by anything done by the owner or the lessee of the building in which the rods were put, to expend any money or make any improvements. He knew that the bake oven he was buying was

connected with a building that his vendor did not own; or at any rate, he could not help but know he did not own. Before his purchase he was in possession of facts more than sufficient to put a person of ordinary prudence on notice that his vendor was selling him something not covered by his title. Under these circumstances it was the duty of Ford to have made inquiry, and inquiry would have put him in possession of every fact necessary to have enabled him to protect his rights before making the purchase. He cannot plead that the owner or lessee of the building was estopped, because neither did anything to mislead or deceive him. Dark v. Johnson, 55 Pa. St. 164, 93 Am. Dec. 732; Mumford v. Whitney, 15 Wendell (N. Y.) 380, 30 Am. Dec. 60; Prince v. Case, 10 Conn. 375, 27 Am. Dec. 675; Cowles v. Kidder, 24 N. Y. 364, 57 Am. Dec. 287.

According to these views, the instruction given by the court was erroneous, and the one offered but rejected not as favorable to Bonds & Company and Barrett as they were entitled to have.

Wherefore, the judgment is reversed, with directions for a new trial not inconsistent with this opinion.