## Carrollton Telephone Exchange Company v. Spicer, et al.

(Decided October 23, 1917.)

### Appeal from Carroll Circuit Court.

1. Licenses—In Respect of Real Property.—A licensor who permits the licensee to erect, under the license upon the former's premises, permanent structures, he will not be permitted afterward to revoke the license so as to entitle him to a removal or an abatement of such structures, although he may have the right to proceed for compensation in the way of damages.

2. Licenses—In Respect of Real Property.—The vendee of property upon which permanent structures have been made under a license obtained from the vendor procures no right against the licensee, either for compensation by way of damages, or to have the encumbrance removed or abated, by injunction or otherwise.

3. Telegraphs and Telephones—Licenses.—The above rules are especially applicable to public service corporations, such as railroads, telegraph and telephone companies having the right of condemnation, and where a telephone line was constructed with the knowledge, consent and acquiescence of the owner of the land over which it was constructed, and the vendor sold the land with the telephone line upon it, the vendee acquires no cause of action against the telephone company because of the burden placed upon the land, as he purchased the land with the knowledge of the burden upon it, although his rights growing out of the mismanagement of the use by the telephone company after his purchase would be preserved.

WINSLOW & HOWE for appellant.

TURNER & TURNER and F. C. GREENE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The question presented by this appeal is whether a vendee may compel the removal of permanent structures erected upon the land by the consent of the vendor and

under his oral permission granting a license in the nature of an easement. It arises in this way: In 1901, R. M. Barker was the owner of about six acres of land in Carroll county, Kentucky, and lying between the Ohio river and the Carrollton & Ghent turnpike, near the city of Carrollton. At the same time Barker was president of and owned a majority of the stock in the appellant and defendant below, Carrollton Telephone Exchange Company. A telephone line belonging to defendant ran along the turnpike, and Barker, desiring to make connections for his company (defendant) constructed a telephone line across his own lot from the pike to the Ohio river and connected with it a cable crossing the river and making connections on the opposite Indiana side. From that time on the telephone company has continued uninterruptedly to use the line constructed across the lot as a part of its telephone system. In 1909 Barker sold the land across which the telephone line was erected to the appellee and plaintiff, Cyrus W. Spicer, and his wife, Sarah D. Spicer, the latter of whom has since died, leaving the other appellees and plaintiffs as her only heirs, who inherited her one-half interest in the lot. On April 15, 1915, more than six years after plaintiffs purchased from Barker the lot in question, they filed this suit in the Carroll circuit court against the defendant seeking a mandatory injunction against it to compel it to remove from the lot its telephone posts, wires, cables, and everything used in connection therewith, upon the ground that the company had constructed its line and had continued to use it as a mere licensee under a verbal license given by plaintiff's vendor, Barker, and which was subject to be revoked at any time before the license ripened into a permanent right of easement, and that plaintiffs had theretofore exercised the right to revoke the license by notifying the defendant to remove its line. A demurrer to the petition being overruled, an answer was filed containing a traverse, pleas of estoppel and limitation, which, being denied by reply, made the issues, and upon final trial the injunction prayed for was granted, and from which the telephone company prosecutes this appeal.

In considering the question it will be well to keep in mind the distinction between a bare, naked license giving to the licensee only the privilege of entry without the right to erect structures, and a license to acquire an interest in land in the nature of an easement by the con-

struction of improvements thereon. All the authorities agree that the former character of license may be revoked at any time by the licensor, but there is a great divergence of opinion among the courts, as well as text-writers, concerning the right of the licensor to revoke the latter character of license after the licensee, with the knowledge and consent of the licensor, has, at great expense, erected permanent structures on the faith of the license. Many of the courts hold to the doctrine that the license is revocable at any time, although improvements and structures may have been made or erected, upon the ground that a contrary view would permit an interest in land to be acquired contrary to the provisions of the statute of frauds; while other courts, including Kentucky, deny the right of the licensor to revoke the license after the licensee has expended his means in the making of improvements and erecting structures under the privileges given by the license. The most recent case from this court is that of E. K. Bond, &c., v. Ford, 175 Ky. 827. In the opinion in that case the two theories advanced by the courts as referred to above are discussed and the cases cited, which it is hardly necessary to here repeat, but the rule formerly adopted by this court in the case of Jarvis v. Satterwhite, 3 Ky. Law Rep. 190, was adhered to, the court saying:

"In view, however, of the irreconcilable conflict in the authorities on this subject and the position this court has heretofore taken, that a parol license upon the faith of which expenditure has been made by the licensee, is not revocable by the licensor, we will not assume to overrule the case of Jarvis v. Satterwhite, *supra*."

Further along, in discussing the right of a purchaser from the licensor to revoke the license, and to acquire the right to remove the structures constituting the encumbrance complained of, the court in that same opinion says:

"And so, if an intended purchaser from the licensor should find connected with the building he is about to purchase another building not conveyed by the title of his vendor, or should find on the premises he was about to buy some encumbrance that did not belong to his vendor and should complete his purchase without making inquiry, he might not be in any better position than his vendor, or permitted to do anything that his vendor could not do. For example, if the owner of the building occupied by Bonds & Company had sold it, the purchaser

would be charged with notice that the bake oven was connected with the building and would be bound before completing his purchase to take such action as he saw proper to take respecting this encumbrance on the property, or otherwise be thereafter estopped to revoke the privilege. If he purchased it without making any question as to the encumbrance, it might well be said that he would occupy the same position as his vendor did, and if his vendor could not remove the encumbrance, neither could he. This is a necessary result of the equitable principles of estoppel laid down in the Jarvis case, and admitting this principle to be sound, we see no reason why it should not be applied to a purchaser from the licensee such as Ford was.''

This court, however, in that opinion permitted the licensor to revoke the license as against the purchaser from the licensee, upon the ground that the facts of that case showed that the granting of the license was personal to the licensee and could not be assigned to another so as to invest that other with an irrevocable license.

It further appeared in that case that the purchaser from the licensee at the time of his purchase knew of the attempted revocation of the license and the dissatisfaction of the licensor with its continued existence, and that he was thereby not in an attitude to insist upon an estoppel as against the licensor.

The Jarvis case from this court, referred to in the Ford case, from which we have just quoted, was one where an owner of a lot orally consented for his adjoining neighbor to construct a house with the cornice overhanging the lot of the licensor, and after the house had been constructed at considerable expense the latter attempted to revoke the license and to require the cornice removed so as not to project over his lot. His right to do so was denied, and in so holding this court said:

''The party here, relying on the consent of the appellant, has erected a building at considerable cost, and to alter the plan, or reconstruct the building, would necessitate additional expense, originating alone from the attempt on the part of appellant to revoke the license, or permission to construct the house in accordance with the plan shown him. It is too late to recall his action in the premises after the expenditure has been incurred.

''It seems to us the only question in this case is, did the appellant consent that the cornice might be constructed so as to overhang his lot? If so, the case is for

the appellee. It is not an easement that the appellee is asserting, but, on the contrary, a license to erect his house, or a part of it, on appellant's land, and whether there was a consideration or not passing to the appellant is immaterial. The building was constructed, and the expenditure made, on the faith of the promise given, and that fact being established by a preponderance of the testimony, the appellant is estopped by his own act; as in the case of an easement where the grant is by parol, if the party entering has expended money in the way of improvements that must be entirely lost, if the grant is revoked, the chancellor will not interfere at the instance of the owner. . . .

"If this was an action to enforce an agreement on the part of the appellant showing his consent in parol the doctrine contended for by him would apply, or if a parol license had been given and an entry made under it, and no expenditures incurred, or where the parties could be placed in *statu quo,* the chancellor would grant relief, but in this class of cases the chancellor will not, and ought not, interfere at the instance of one who had induced another to build on his land, and when, to remove the building, or change the plan, would incur a useless expenditure of money to gratify one whose breach of faith is the primal cause for seeking the interposition of the chancellor.''

Whatever may be thought as to the relative merits of the two divergent positions of the courts upon this subject as a matter of first impression, we feel compelled, under the rule of *stare decisis* to adhere to the previous holdings of this court denying the right of the licensor to revoke the license and restore his premises to their former condition after the licensee has exercised the privilege given by the license and erected the encumbrance at considerable expense.

The rule appears to be particularly applicable where the licensee is engaged in the business of serving the public and possessing the right to acquire property for that purpose by condemnation. In such cases, if the one serving the public acquires his rights and constructs his utilities with the consent of the licensor, the latter may not afterward revoke the license because of defects in its acquisition and recover the land upon which the utility is constructed, nor can he invoke the aid of the courts in removing them, although such relief might be had in cases where the right was obtained not with the permis-

sion or consent of the licensor or the owner of the encumbered property, but by a wrongful trespass.   This is the rule laid down by this court in the case of Holloway, &c., v. Louisville, &c., Railway Co., 92 Ky. 244.   In that case the railway company had constructed its road upon the land of the wife, but under a parol grant or permission from her husband, the wife acquiescing therein and silently witnessing the construction of the road, after which she sought to recover the right of way from the railway company.   The above facts, as well as that of the company being engaged in a public business, were relied upon as a defense to her suit.   That defense was upheld, and in doing so the court said:

"If one grants the right of way by parol or permits a railroad to be built over his land at great expense and labor, and the interests of the public to intervene by the road being put into operation over it, and by his conduct induces the belief that he has consented to it, while he may be entitled to some character of relief by way of compensation, yet he should not, in our opinion, be allowed to recover the land.

"This rule should be applied to a married woman, because to permit her to do so would be tantamount to allowing her to commit a fraud, and she may be estopped by conduct amounting to one. . . . Estoppel from claiming the land after the road has been built over it is based upon the ground that the owner has himself so acted as to induce what has been done, and that in good conscience he cannot now say to the railroad company you have wrongfully placed your road upon my land."

In other parts of the opinion it is held that the defense would not avail a defendant who was upon the plaintiff's land as a trespasser and without his consent.   See, also, Louisville, &c., Railway Co. v. Hess, &c., 92 Ky. 408.

Telephone companies are public utility corporations subject to the control of the legislature (Constitution, section 199), and have authority to condemn land for the construction of their lines.   (Section 4679d, Kentucky Statutes.) The interest of the public in and to the maintenance of their lines, and their continued operation, is as complete as it is in the maintenance and continued operation of a railroad.   This fact was recognized by this court in the case of Cumberland Telephone & Telegraph Co. v. Averitt, 120 Ky. 34, wherein it is said:

"We are unable to distinguish a telephone line from a steam railway or an electric railway on the public highway. . . . The telephone takes the place of the private messenger. The transmission of messages by telephone is a business of public character, which is conducted under public control in the same manner as the carriage of persons or property. . . . The wires of a telephone company are no less immovable than the rails of a railroad, and they are no more a burden to the adjoining property than the rails."

It would seem, then, to necessarily follow that if the licensor could not compel the removal of the railroad in the one case, after he had consented to and acquiesced in its construction, he would also be denied the right to require the removal of the telephone line erected and constructed under the same conditions. It would appear, then, that in this case the original licensor, Barker, would be denied the injunctive relief which the court granted to the plaintiffs had he brought the suit himself, conceding that he could have maintained a suit for damages to his land because of its appropriation by plaintiff in the construction and maintenance of its telephone line. If he was not entitled to the character of relief given, he certainly could not vest his vendee with rights which he did not possess.

But, apart from this, the law appears to be well settled that if a vendee purchases property with an encumbrance upon it which is open and visible, he does so subject to the right of the encumbrancer to peaceable and unmolested enjoyment so far as he is concerned. In other words, whatever rights the vendor may have possessed as against the one who constructed the encumbrance, the vendee obtains none by his purchase.

The quotation made in a former part of this opinion from the recently decided Ford case, *supra,* is sufficient to show this court's views upon the point under consideration, and in 33 Cyc. 156, it is said: "Where a railroad company appropriates land for its roadbed and track without the consent of the owner of the land and without condemning the land under its charter, the owner has a right of action upon an implied promise to pay for the value of the land. But such right of action does not accrue to a subsequent purchaser who was not the owner at the time of the appropriation; nor can such purchaser sustain an action for the use and occupation

of the right of way as on an implied promise to pay him therefor."

And again, on page 158, it is stated that "By the weight of authority, however, if the landowner, knowing that a railroad company has entered upon his land and is engaged in constructing a road thereon, encourages or permits it to do so, he and subsequent purchasers from him will be estopped from maintaining either trespass or ejectment to recover possession of the land; nor can he maintain an injunction to restrain the company from using the road so constructed."

Continuing, the text states the law to be that the landowner, under such circumstances, while deprived of the right to remove the encumbrance, may still have his remedy to recover compensation, and then says: "*A fortiori* one afterward buying the lands from the owner with notice can neither maintain ejectment nor trespass against the company, nor obtain affirmative relief against it."

In the case of Roberts v. Northern Pacific Railroad, 158 U. S. 1, the Supreme Court, in considering this precise point, said:

"It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burthen of the railroad, and the right to payment from the railroad company, if it entered by virtue of an agreement to pay, or to damages, if the entry was unauthorized, belongs to the owner at the time the railroad company took possession."

Other cases in point are Waggoner v. Wabash R. R. Co., 185 Ill. 154; McLenden v. Atlanta, &c., R. R. Co., 54 Ga. 293; Hatry v. Painesville, &c., R. R. Co., 1 Ohio Cir. Ct. 426; Pollard v. Maddox, 28 Ala. 321; Hendrix v. Southern Ry. Co., 130 Ala. 205; Atlanta, &c., R. R. Co. v. Barker, 105 Ga. 534; Missouri Pacific R. R. Co. v. Gano, 47 Kans. 457; Snyder v. Chicago, &c., R. R. Co., 112 Mo. 527; Taylor v. Chicago, &c., Ry. Co., 63 Wis. 327, and others found in the notes to the text from the volume of Cyc., *supra.*

This rule is founded upon the soundest principles and is in thorough accord with the law's cherished desire to promote justice, equity and fair dealing in human transactions. To grant relief to the vendee in such cases in

compensation by way of damages, or to give him the benefit of other remedies looking to the abatement of the encumbrance, such as ejectment, trespass to try title, or injunction, would be but rewarding him for that which he did not own, and would allow him to reap where he had not sown. This because he is presumed to have purchased the property subject to the encumbrance, and to have paid for it the reduced value brought about by its construction. We are unable to draw a distinction between a railroad and a telephone line as to the application of the rule. The reason for its application exists with equal force in each case.

Of course, this rule would not bar him from the right to proceed for damages for any unauthorized or wrongful act on the part of the owner of the encumbrance, committed after the purchase, but this is quite distinct from the question under consideration.

The judgment appealed from not being in accord with this opinion, it is reversed, with directions to dismiss the petition, and for proceedings consistent herewith.