## Chicago, St. Louis & New Orleans Railway Company v. Ware.

(Decided June 24, 1927.)

### Appeal from McCracken Circuit Court.

1. Eminent Domain.—Where railway appropriated condemned land before payment of damages, as required by Ky. Stats., section 839, after condemnation under sections 835—838, 840, owner had cause of action for wrongful appropriation, and suit will be treated as appeal from judgment of county court in condemnation proceeding.

2. Eminent Domain.—Suit against railroad for wrongful appropriation of land condemned under Ky. Stats., sections 835—838, 840, but appropriated before compliance with section 839, may be brought by one owning land when actual work of excavating began, though she did not own it when water pipe was laid and surveys and measurements made, since there is difference between technically taking possession of land and appropriating it.

3. Eminent Domain.—In action against railroad for wrongful appropriation of condemned land before compliance with Ky. Stats., section 839, fair market value of land appropriated is measure of damages.

4. Eminent Domain.—If owner is willing to sell and desires to do so, and another is willing to buy it and desires to do so, and trade is consummated on that basis, it establishes fair market value of land, which is measure of damages for wrongful appropritaion.

5. Eminent Domain.—In establishing fair market value of land wrongfully appropriated by railroad, to determine measure of damages, all surrounding circumstances may be taken into consideration, including the coming of the railroad.

6. Eminent Domain.—In action against railroad for wrongful appropriation of condemned land without compliance with Ky. Stats., section 839, admission of evidence of fair market value, based on price paid to others by railroad in obtaining right of way, held error, regardless of similarity of conditions, such sales being forced.

7. Eminent Domain.—Where jury visits land and makes personal inspection, to determine fair market value to be paid by railroad wrongfully appropriating it, such inspection should have some weight, but jury cannot arbitrarily disregard all other evidence.

WHEELER & HUGHES and TRABUE, DOOLAN, HELM & HELM for appellant.

C. C. GRASSHAM and L. B. ALEXANDER for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

In November, 1924, the appellant filed in the McCracken county court a petition against Mrs. Jesse Maxon Ware, seeking to condemn 14 acres of land in McCracken county, near the village of Maxon, on the Paducah and Woodville road. Summons was issued against Mrs. Ware, but was not executed until some months thereafter. Commissioners were appointed to assess damages and the value of the land proposed to be taken. These commissioners made their report, apparently in November, 1924, although the copy of the report in the record bears no date. These commissioners found the total value of the 14-acre tract of land to be

$1,400. The value of the land to be taken was fixed at $130, and the damage to the residue of the tract was fixed at $470. After the summons was executed on Mrs. Jesse Maxon Ware, she conveyed the land to the appellee; the date of the conveyance being February 6, 1925.

The appellant on the 20th day of May, 1924, filed an amended petition, setting up this fact, and summons was issued against the appellant on June 15, 1925. Mrs. Jessee Maxon Ware filed exceptions to the report of the commissioners in June 1925. She disclosed in the exceptions filed by her that she was not the owner of the land, but her exceptions raise all the questions that might have been raised by her, if she had been the owner. Summons was executed on appellee, but she took no steps concerning the condemnation proceedings pending in the county court. It appears that, at the time the summons was executed on her, appellant had already appropriated the land and constructed its railroad across it.

On the 8th day of June, 1925, appellee filed her suit in the McCracken circuit court, alleging that appellant had wrongfully taken possession of her land. In answer to her petition appellant pleaded the county court condemnation proceedings as a bar, and also pleaded that it had taken possession of the land prior to her obtaining title. The amount of damages which she claimed was controverted in the answer. The trial of the case resulted in a judgment in favor of appellee for $3,500.

The first error assigned in the brief for appellant is that the court should have sustained its plea in bar, because of the condemnation proceedings pending in the county court. The method of condemning land for a railroad right of way is fully set out in sections 835-838, and 840, Ky. Stats. Sections 835, 836, and 837 were complied with in the county court proceedings; that is, appellant filed its petition as required by section 835, and the county court appointed commissioners as therein provided. The commissioners made their report as provided in section 836, and summons was issued thereon as provided in section 837. Exceptions were filed by Mrs. Ware as provided in section 838, and thereafter an amended petition was filed and summons issued thereon. Section 839 governs as to when the railroad company may take possession of the property so condemned. It cannot do so until after the damages have been assessed by the court pursuant to the verdict of a jury on the trial of exceptions. This cannot be done, however, until

the railroad company has paid to the owner the amount found as damages and costs. In the event there is an appeal from the judgment in the county court, the railroad shall not be entitled to take possession of the land until it shall have paid into court the damages assessed and all costs.

The appellant in this instance appropriated the land of appellee when it had no right to do so, and this was an abandonment of the condemnation proceedings pending in the county court. The appellee had a cause of action against appellant for the wrongful appropriation of her land. The railroad company cannot be allowed to take advantage of its wrongful act, and, after having appropriated the property, have a trial of the exceptions to the report of the commissioners. The acts of the appellant in appropriating the land without proceeding in accordance with the provisions of the law cannot be approved. The property of an individual may not be thus taken; but, since it has been done, the appellee is not without remedy. Her suit must be treated as if it were an appeal from the judgment of the county court. Harlan County v. Cole, 218 Ky. 819, 292 S. W. 501, this day decided.

It is urged in the brief for appellant that the appellee cannot maintain this action, because the damages had accrued prior to her becoming the owner of the land. Appellant admits the wrongful appropriation of the property, but insists that the title was in Mrs. Jesse Maxon Ware when the property was appropriated, and for that reason appellee cannot maintain her action for damages. If it be true that the property was appropriated by appellant while Mrs. Ware was the owner thereof, she alone may maintain an action for the value of the land so appropriated and damages to the residue. This was so held in the case of Carrollton Telephone Exchange Company v. Spicer, 177 Ky. 340, 197 S. W. 827, L. R. A. 1918A, 950. The mere taking possession of the land for the purpose of locating the railroad line across the land by making surveys, measurements, and cross-sections, would not be sufficient, however, to deprive appellee of her right of action, if the actual appropriation of the land took place after she became the owner. There is a difference between technically taking possession of land and appropriating land to the use of the person taking it into possession. An examination of the

evidence shows that appellant in December laid a water pipe through this land, and that during the same month surveys and measurements were made by engineers preparing a blueprint, showing what the contractor would be required to do when he commenced work on this particular tract of land. The actual work of excavating did not commence until April, and that was after appellee acquired title to the land. Appellee was the owner of the land at the time it was actually appropriated, and she is the proper person to maintain the action for the recovery of its value.

Another error suggested by appellant is the admission of incompetent evidence. In cases such as this, the fair market value of the land appropriated is the measure of damages. If a man is willing to sell his land and desires to do so, and another person is willing to buy the land and desires to do so, and a trade is consummated on that basis, it establishes the fair market value of the land. Where the seller is under compulsion to sell, or the buyer is under compulsion to buy, the consummation of a trade between them would not establish a fair market value. All of the surrounding circumstances may be taken into consideration in establishing the fair market value of a tract of land. In the case of Kentucky Hydro-Electric Company v. Reister, 216 Ky. 303, 287 S. W. 357, on this point the court said:

> "In condemnation proceedings, landowners should be allowed to show all facts existing before the taking which a seller would adduce in attempting to make a sale, and all facts resulting from the taking to which a purchaser would call attention in an effort to beat down the price."

The evidence for appellee shows that her witnesses based their opinion of the value of the land taken by appellant and the resulting injury to the residue largely upon the price which had been paid to others by appellant in obtaining the right of way in this vicinity. Obviously a transaction between a railroad company, which must have a right of way, and a landowner, who must surrender a part of his land to the railroad company as a part of the right of way, is not such a transaction as would establish a fair market value. The question as to whether such evidence is competent was discussed in the recent case of Kentucky Hydro-Electric

Company v. Woodard, 216 Ky. 618, 287 S. W. 985. The court there said:

"Appellant first offered to show that the land of the appellees through which its easement runs was not better in quality and value than the average of all the other lands in Mercer county through which its transmission line passes, and then offered to prove what the acquisition of the right of way through Mercer county, excepting, of course, appellees' land, had cost it. It will be noted that appellant did not undertake to prove simply the value of property similar to and in the vicinity of that of appellees. Such testimony is admissible under the many opinions of this court, some of which are collected in the recent case of Big Sandy & K. R. R. Co. v. Stafford, 207 Ky. 272, 268 S. W. 1071. on the theory that it tends to establish the value of the property sought to be condemned. But even this rule requires that the similarity in all essential particulars must be such as to raise a logical inference that practically the same elements of value are present in both cases. West Kentucky Coal Co. v. Dyer, 161 Ky. 407, 170 S. W. 967; 22 C. J. 761. What appellant here undertook to do was to prove what it had paid for a right of way through farms equal in quality and value to that of appellant.

"Now, it is obvious that the purchase price of such a right of way necessarily included the two elements of damage involved in this litigation; that is, the value of the land actually taken for the easement and the damage resulting to the rest of the land by reason of the taking of the easement. There is a total lack of proof in this case that appellant's transmission line, as it runs through the other farms in Mercer county, affects them in the same fashion as it does the farm of the appellees. For instance, as stated, appellant's line bisects appellees' farm, enters it near a spring, and, for a portion of its length, runs along a private right of way on the side opposite to that on which appellees' residence abuts; it crosses a road and a telephone wire connecting appellees' residence with the barn and the outside world; one of the towers is erected near the front of appellees' dwelling; and appellees' privacy in their home is in some measure curtailed by ap-

pellant's right of patrol. All of these matters may have a tendency to affect the market value of that part of appellees' farm not actually taken by appellant for its easement in the eye of prospective purchasers. On the other hand, for aught that appears in this record, this transmission line may run through the other farms along a fence row, or across their back ends, out of sight of the residences and where its erection can interfere practically not at all with any use to which the owners may wish to put their farms.

"Thus it is clear that appellant failed to show such similarity in resulting damages between appellees' farm and the other farms of Mercer county through which its transmission line runs as to raise a logical inference that practically the same elements of value were present in both cases. What appellant paid for its right of way included compensation, not only for such land as was taken, but also such resulting damage as the rest of the property incurred. As this second factor must necessarily have been a variable one in the case of each farm, appellant failed to bring itself within the rule establishing the competency of testimony covering the value of simlar tracts of land in condemnation suits. Indeed, we doubt if appellant could have gone into questions of similarity, where the farms through which it ran were so many and the factor of resulting damage different in each case. It would have taken the trial too far afield in collateral matters in the determination of the question of similarity."

The conclusion of the court in that case was that the trial court committed no error in excluding the evidence, but it apears, that the opinion on this point is based upon the fact that appellant had not established similarity of conditions. It is not decided in that case that the evidence would be competent even if similarity of conditions should be established. In the instant case there was an effort made to establish similarity of conditions, at least to some extent, but we are not prepared to hold that the evidence as to the price paid others for its right of way by appellant was competent. In our opinion, the establishment of similarity of conditions would not render such evidence competent. The fair market value is the proper measure of damages for the land taken, and this must be shown by competent evidence.

There was some evidence as to the value of the land offered by appellee, aside from the value established on the basis of the amount paid to others by appellant, and some of the witnesses who testified for appellant indicated a fair market value of this particular tract of land greater that its value for farming purposes. Its value for farming purposes was established at about $100 an acre, and some witnesses state that the coming of the railroad doubled the value of the land. The coming of the railroad was an element which might be considered in determining the fair market value of the land. Another witness admitted that he had refused $8,000, for 24 acres of land adjoining the 14-acre tract.

The jury visited the land and made a personal inspection. This should have some weight, although a jury cannot arbitrarily disregard all other evidence, and base their verdict solely on the result of their observations. We cannot hold that the incompetent evidence was not prejudicial, and in such cases the full jury must agree on the verdict fixing the damages, but a unanimous verdict does not indicate that the incompetent evidence was not prejudicial.

The judgment is reversed, and cause remanded for proceedings consistent with this opinion.