## Brandies Machinery & Supply Company v. St. Matthews Financing Company.

(Decided March 5, 1929.)

S. L. GREENBAUM, L. D. GREENE and KENDRICK R. LEWIS for appellant.

TRABUE, DOOLAN, HELM & HELM for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Reversing.

In a suit to settle the affairs of the Staebler Construction Company, a partnership composed of C. A. Staebler and others, a conflict arose between the appellant, Brandeis Machinery & Supply Company, and the appellee, St. Matthews Financing Company, as to the priority of liens on certain road-building machinery. The material facts are not in dispute.

The construction company was engaged in road building, and became indebted to the Brandeis Company in the sum of $4,810.15, represented by trade acceptances and an open account. It appears the indebtedness arose from the purchase of machinery. To secure the payment of this sum, on March 9, 1926, the Staebler Company executed and delivered to the Brandeis Company a mortgage on certain equipment then located in Perry county, Ind. The mortgage was shortly thereafter duly placed of record in that county.

On April 17, 1926, the Staebler Company borrowed $18,000 from the St. Matthews Financing Company, and to secure its repayment, executed a mortgage on a quantity of tools and machinery, including that which had been previously mortgaged to the Brandeis Company. This was promptly recorded in Perry county, Ind., and also in Jefferson county, Ky., where all the parties re-

sided. The lower court adjudged the mortgage lien of the St. Matthews Company superior on the ground that the record in Indiana did not constitute constructive notice. The Brandeis Company seeks a reversal of that judgment.

The very interesting and novel question is raised and ably argued as to the effect to be given the recording of the first mortgage in Perry county, Ind.; that is, whether the record of a lien in another state, where the property has its situs, is constructive notice to citizens of Kentucky, in which state all parties reside. But with the view which we have, that the St. Matthews Financing Company had notice of sufficient facts to put it on inquiry, and which imputed to it actual notice of the outstanding lien, a consideration of the question is not necessary.

Briefly stated, the facts upon which our conclusion rests are these: The officers of the St. Matthews Financing Company were fully aware of an indebtedness due by the Staebler Company to the Brandeis Company, which Mr. Fiske, the vice president, who seems to have handled the transaction in connection with Mr. Veech, the manager, says he presumed was for machinery. In considering the loan, this matter was discussed, as well as the value of the equipment in Indiana upon which the lien in part was to be placed; but there is an emphatic denial of any knowledge of the pre-existing mortgage. Staebler testified that he went over his indebtedness with the financing company, and furnished it a list of his creditors, and that its representative made an audit of his books. There was another mortgage at the time on a certain road roller then in the lot which had been executed to the Austin-Western Supply Company. Staebler says he advised the St. Matthews Financing Company of this mortgage, and says that, while he does not recall any particular conversation respecting the Brandeis mortgage, he is pretty sure he did tell Mr. Veech about it. There was also a prior mortgage on other machinery in favor of the St. Matthews Bank & Trust Company, which seems to be an allied institution that had been financing Staebler in his business. The appellee admits that no verification was made of Staebler's representations, except a rather superficial examination of his books. No investigation of the records either in Perry county, Ind., or Jefferson county, Ky., was made. The precaution exercised in having its own mortgage recorded where the

chattels were located and the failure to look into the records there for prior liens was hardly consistent, particularly in the light of the knowledge which the company had of Staebler's affairs. The attorney for the St. Matthews Financing Company who prepared the mortgage says that, when Staebler gave him a list of his property, he was asked about prior liens and told about the mortgages on the steam roller and of the St. Matthews Bank & Trust Company; and says the second liens referred to in the mortgage are those two.

The mortgage of the St. Matthews Financing Company contains a covenant of ownership, and, further, "that the said property is free from all encumbrances whatsoever, except certain purchase money mortgages made to sellers of the said equipment, and certain mortgages made to secure indebtedness of the mortgagor to the St. Matthews Bank & Trust Company, all of which have been recorded in the proper offices."

It is noteworthy that, in addition to the specific reference to the mortgages of the St. Matthews Bank & Trust Company, there is a reference to "purchase money *mortgages* made to sellers of the said equipment." Now, actual knowledge of one such mortgage (that on the road roller) was admitted. The exclusion from the warranty of more than one, coupled with the admitted knowledge on the part of the St. Matthews Financing Company of an indebtedness to the Brandeis Company, which Mr. Veech says he knew to be the only concern in Louisville selling road machinery, and the fact that this machinery was then located in Perry county, Ind., was a sufficient signal and warning to put the officers of the St. Matthews Financing Company on notice. With such information (omitting from consideration Staebler's evidence concerning actual notice) it became its duty to make an investigation. This it did not do, and acted at its peril.

In E. K. Bonds & Co. v. Ford, 175 Ky. 827, 195 S. W. 124, the well-known rule by which we are guided as it is stated in 2 Pomeroy's Equity Jurisprudence, sec. 613, is quoted, namely:

"If a purchaser or incumbrancer dealing with property of which the record title appears to be complete and perfect, has information of extraneous facts or matters in pais sufficient to put him on inquiry respecting some unrecorded conveyance, mortgage or incumbrance, or respecting some outstand-

ing interest, claim or right which is not the subject of record, and he omits to make proper inquiry, he will be charged with constructive notice of all the facts which he might have learned by means of a due and reasonable inquiry."

The difficulty in each case is whether the information shown to have been in the possession of the parties is sufficient to put them on inquiry. Generally speaking, it is enough if the information is such as would lead a prudent man, using ordinary diligence, to make further investigation which would result in obtaining the knowledge sought to be charged. Warden v. Addington, 131 Ky. 296, 115 S. W. 241; Mitchell v. First National Bank of Hopkinsville, 203 Ky. 770, 263 S. W. 15. As precedents for our conclusion that the state of facts proven in this case are of that quality, we note the following cases:

Jones, a tenant, executed a mortgage to Bowles, his landlord, on a crop of tobacco and other property to secure rents. This was not recorded. He later executed a mortgage to an insurance company containing this recitation: "That the said first party (Jones) hereby expressly warrants his title in and to the same against the claim of all persons whatever except $450 rent claim on tobacco." It was held that the lien of Bowles was superior because of this exception, and that the insurance company would "not be permitted in the face of the recitals in the instrument under which it asserts a lien to say that its lien is superior to that of the landlord." Bowles' Executor v. Jones, 123 Ky. 395, 96 S. W. 1121, 29 Ky. Law Rep. 1022.

We have already noted that the mortgage to the St. Matthews Financing Company referred to more than one mortgage to sellers of equipment, and it concedes knowledge of only one such mortgage.

In Ky. Lbr. & Mill Work Co. v. Ky. Title Savings Bank & Trust Co., 184 Ky. 244, 211 S. W. 765, 5 A. L. R. 391, it appeared that Wright, the owner of a lot, had mortgaged it to the bank for the purpose of securing money with which to erect a house. The sum was placed in a special account to be paid out by the bank to contractors and materialmen as their bills were presented bearing approval of the mortgagor. But the bank advanced certain funds to Wright, and, he having left the country, the bank applied the balance standing to his credit in the

special account to satisfy those advancements. In the meantime the Kentucky Lumber & Mill Company furnished material for the erection of the house with the knowledge of the bank, acquired through Wright. It was held that the bank, having this information and the knowledge of the financial condition of Wright, had sufficient notice to put it on inquiry, and priority was adjudged the lien of the materialmen, in so far as the advancements were concerned.

In Cable Piano Co. v. Lewis, etc., 195 Ky. 666, 243 S. W. 924, it appeared that the Cable Company had sold a piano to Stoner when he lived in Georgia, and the lien reserved to secure payment was recorded there. Stoner moved to Kentucky and brought the piano with him. He sold it to Lewis, who claimed ownership when the company sought to enforce its lien in this state. It was held that the recording of the lien in the home of the mortgagor and situs of the chattel (Georgia) was constructive notice to Lewis, a resident of Kentucky. (The difference in that case and this one in that respect is that the residence of all these parties was at all times in Kentucky.) But the decision was not confined to that constructive notice. Stoner testified he told Lewis he had purchased the piano from the Cable Company, whose address was Atlanta, Ga., and that there was a mortgage on it, but he had paid it off. Lewis testified he had no knowledge of the lien of the Cable Company, but did not deny knowledge of the debt. The court held the circumstances were enough to put Lewis on notice, and the lien of the Cable Company was adjudged superior.

A consideration of all the evidence in this case convinces us that the officers of the St. Matthews Financing Company had implicit confidence in Mr. Staebler, and were relying on his personal responsibility, and consequently made no inquiry to assure themselves as to any outstanding lien. Having in law, as we have indicated, the equivalent of constructive notice of the prior lien of the Brandeis Company, its mortgage was inferior, and the court erred in adjudging otherwise.

The judgment is accordingly reversed.