**COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,**

v.

**TRANSAMERICAN FREIGHT LINES,
INC., Transamerican Properties,
Inc., Appellees.**

Court of Appeals of Kentucky.

March 26, 1965.

Robert Matthews, Atty. Gen., William A.
Lamkin, Jr., Asst. Atty. Gen., Frankfort,
Marshall B. Woodson, Jr., Raleigh O.
Jones, Louisville, for appellant.

Stanley B. Mayer, Ben T. Cooper,
Mayer, Cooper & Kiel, Louisville, for ap-
pellees.

STEWART, Judge.

Appellant, Commonwealth of Kentucky,
Department of Highways, condemned a
parcel of land owned by appellees, Trans-
american Freight Lines, Inc., and Trans-
american Properties, Inc., for use in the
construction of the North-South Express-
way in Louisville. The property fronts on
First Street for 197.83 feet and extends
back uniformly 222 feet to Brook Street.
The land was improved with a brick depot
building originally erected in 1910; an of-

fice was added to this structure in 1929; and a metal building used as a service garage was constructed in recent years.

The Jefferson County Court entered judgment of $147,950 for appellees, pursuant to the commissioner's award. The parties on both sides appealed to the circuit court where a trial resulted in a verdict and judgment of $175,000.

The Department brings the case to this Court, urging a reversal of the judgment on the grounds: (a) That evidence of sales by landowners to a public urban renewal agency was improperly admitted on cross-examination as proof of comparable real estate transfers; (b) that certain plats and photographs permitted to be introduced should have been excluded; (c) that the amount of documentary tax stamps on deeds was wrongfully allowed to establish the consideration of the sale prices of certain parcels of land; and (d) that the deposition of Clifford W. Dorman should not have been read to the jury over the Department's objection.

As to the first point raised, appellant's appraisal witnesses, Robert Adelberg and Sidney Jenkins, Jr., testified concerning a comparable sale consummated in 1963 of a block of land situated a short distance north of appellees' tract. The real estate was conveyed by the Urban Renewal Agency of Louisville to a Mrs. Stattman. This sale was made in the open market after the Agency had acquired from the original landowners the block consisting of a number of parcels with improvements on them. The Agency thereafter razed all the structures. The purchase price paid by Mrs. Stattman, according to these witnesses, was $3.50 per square foot for the bare land.

Adelberg and Jenkins, using this comparable sale as a measure for appraisal, together with other factors not in issue, fixed the value of appellees' land at $3.15 to $4.00 per square foot. Jenkins believed appellees' tract should be valued at the lesser figure because it was smaller in size than a block.

In the cross-examination of Adelberg and Jenkins, counsel for appellees produced before them a plat of the block which purported to show the individual parcels of property, as to size and location, before the block was purchased by the Agency. On this plat, which appellees had caused to be prepared from a map in the office of the finance department of the City of Louisville, measurements of all the boundaries of each parcel of land were noted. Several deeds of certain individual parcels in the block which were conveyed by the original property owners to the Agency were exhibited to Adelberg and Jenkins; and they were instructed to examine these instruments and state to the jury the amount of money represented by the documentary tax stamps placed on each deed.

These witnesses were then called upon to compute and divide the number of square feet in each parcel by the alleged purchase price, arrived at by figuring the total amount of the tax stamps on the deed, in order to estimate the square-foot value of each lot transaction. The outcome of this testimony, claimed to have been brought out only for impeachment purposes, revealed a price paid by the Agency ranging from $4.95 to $6.75 per square foot. Appellant objected to the introduction of all this testimony.

Was the attack upon the credibility of a subsequent sale made by the Urban Renewal Agency resorted to in a proper manner? This Court has uniformly held that a land transaction made under threat of condemnation is inadmissible as a comparable sale.

Under the urban renewal statutes, it is made clear that the land sought is not obtained on a random, voluntary basis. Rather, an entire slum or blighted area (see KRS 99.340(7) (a) and (8)) is designated as such by certain public agencies and by the legislative body of the city or county (KRS 99.370(6)). The statutes then make the urban renewal agency responsible for " * * * the acquisition of individual

pieces of property in the designated areas either by purchase or eminent domain, the replatting or replanning of the area * * * and the subequent sale or lease thereof to private individuals or public agencies under restrictions compelling conformity to the over-all plan * * *." See Miller v. City of Louisville, Ky., 321 S.W.2d 237. Thus, acquisitions of land under an urban renewal plan are very similar to acquisitions for right of way by the Commonwealth, acting through the Department of Highways. As to either, the acquisitions are forced and confined to the designated area. We might add that such a situation exists with reference to any agency clothed with condemnation power.

In Stanley's Kentucky Instructions to Juries (2d Ed.1957), sec. 360, p. 568, this statement appears: "The market value is the price which it (the subject property) will bring when it is offered for sale by one who desires to sell, *but is not compelled to do so,* and is bought by one who desires to purchase, *but is not compelled to have it."* (Our emphasis.)

■ Indubitably, prices paid by the Commonwealth or by the Urban Renewal Agency in Louisville to acquire rights of way or land under threat of condemnation do not represent sales which meet the fair-market-value definition. A property owner may have no desire whatsoever to part with his property, but he must do so either by negotiation or after expensive litigation. On the other hand, the Commonwealth, or the Agency, must have this very property to complete its plans. No other property will do.

Kentucky law has consistently recognized that sales consummated under these circumstances are not competent evidence of "fair market value." The element of voluntariness or freedom from compulsion is lacking. See United Fuel Gas Company v. Mauk, Ky., 272 S.W.2d 810; Louisville & N. R. Co. v. Johnson, 233 Ky. 628, 26 S.W. 2d 535; Commonwealth, by State Highway Commission v. Combs, 229 Ky. 627, 17 S.W.

2d 748; and Chicago, St. L. & N. O. Ry. Co. v. Ware, 220 Ky. 778, 295 S.W. 1000. Some of the above cases involved the acquiring of land by railroads, but the foregoing principle of law is equally applicable to them.

■ We conclude the introduction of the incompetent evidence alluded to on cross-examination was prejudicial.

The next two complaints will be considered together. One complaint concerns a plat and certain photographs introduced to identify and bring out points in connection with the block purchased and then sold by the Urban Renewal Agency to Mrs. Stattman. The other refers to computations of the amount of documentary tax stamps on the deeds shown to the witnesses, Adelberg and Jenkins, and which were used on the cross-examination of them to establish the consideration of certain lot sales when the Agency bought these lots as a portion of the same block. Such methods were employed in developing testimony in respect to lot transactions as proof of comparable sales which sales, for the reason noted above, should not have been allowed as evidence. We believe that, in the event of another trial of this case, these items will serve no evidentiary purpose and we therefore assume they will not be resorted to.

■ A final point argued is that it was error to allow the deposition of Clifford W. Dorman to be read as a part of appellees' proof. It is asserted Dorman was not shown to be qualified to offer an opinion as to Louisville real estate. It appears Dorman was deceased when this case was tried. CR 26.04(3) provides that the deposition of a witness may be read at the trial if that witness is dead and the trial court so finds. There is nothing in the record before us to indicate whether the trial court made such finding. This is a requirement that should be followed. Unquestionably, the provisions of CR 26.04(3) will be satisfactorily complied with if another trial be had; so the question of Dorman's quali-

fications as a witness will be briefly considered.

 Dorman's statements demonstrate he was a professional appraiser, and had lived and done appraisal work at Lexington for the past eight years prior to his testimony. The deposition not only discloses that he was amply trained to make appraisals of land but, further, that he had viewed the property and studied the real estate values in the same area. Besides, it is shown he had made other appraisals in Jefferson County. See Commonwealth, Department of Highways v. Citizens Ice & Fuel Company, Ky., 365 S.W.2d 113.

We are of the opinion this witness showed the necessary experience to give an expert appraisal estimate in this case.

Wherefore, the judgment is reversed for consistent proceedings.