## Warfield Natural Gas Company v. Hammons.

(Decided February 14, 1930.)

KIRK, KIRK & WELLS for appellant.

B. M. JAMES and JOE HOBSON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

This is a condemnation proceeding started in the county court by the appellant, and by which it sought to acquire an easement through the appellee's farm in Floyd county for the purpose "of laying, maintaining and operating a pipe line or lines for conveying, transporting and delivering natural gas to the market and maintaining and operating such pipe line or lines, telephone and telegraph lines for use in connection therewith, together with the right of ingress and egress to examine, alter, repair, operate, maintain and remove such pipe line or lines." The right of way for this easement thus sought runs through the bottom lands of the

appellee's farm adjacent to Bull creek for a distance of 59 rods and is 20 feet wide. The area comprised within this strip is slightly less than one-half acre. The first set of commissioners appointed by the county court fixed the compensation to be paid for this easement at the sum of $490. The report of these commissioners was quashed because it developed that one of the commissioners was ineligible to serve as such. The second set of commissioners fixed the compensation at the same figure as that fixed by the first set Both appellant and appellee filed exceptions to this report; the appellant on the ground that the compensation allowed was excessive, and the appellee on the ground that it was not enough. The jury in the county court found a verdict in exactly the same amount as that fixed by the two sets of commissioners. On appeal to the circuit court, the jury awarded the appellee compensation in the sum of $500, and from the judgment entered on that verdict this appeal is prosecuted.

Two grounds are relied upon for reversal. It is first contended that the trial court erred in not awarding the appellant, the condemnor, the closing argument. While the position of the appellant in this regard is sound, for in the cases of Shelbyville & Eminence Turnpike Co. v. L. & N. R. Co., 51 S. W. 805, 21 Ky. Law Rep. 548, and Calor Oil & Gas Co. v. Franzell (Ky.) 122 S. W. 188, it was expressly held that where exceptions are filed by both parties to the report of the commissioners, the burden of proof is then on the condemnor, yet the appellant cannot rely upon this error as a ground for reversal, because it did not make such error a ground in its motion for a new trial in the lower court. Acme Mills & Elevator Co. v. Rives, 141 Ky. 783, 133 S. W. 786; McNeil v. Choate, 197 Ky. 682, 247 S. W. 955.

The other ground relied upon for reversal is that the verdict is excessive, and in view of the facts as disclosed in this record, we are constrained to so hold. There is no evidence whatever that any damage was done to any crops or fences of the appellee's farm in the construction of this pipe line which was constructed between the trials in the county court and the circuit court. There is no evidence that any portion of the appellee's farm was taken or damaged by the construction of the pipe line except the strip 20 feet wide and 59 rods long through which the easement runs. As to this strip, a 20-inch pipe was buried in the ground at a depth of about two feet or more

and a telephone line strung on 4 or 5 poles planted in the ground. It is true this strip runs through the bottom lands of appellee's farm—the most fertile and best part of his land. But conceding all that the appellee says of its fertility, the court knows as a matter of common sense that the price of $1,000 per acre which the appellee places on this bottom land is fantastic, and that agricultural land remotely situated as this is, even if it is on a county road leading to the county seat, is not worth any such price. Appellee does not show even by the remotest speculation that there is any coal, oil, gas, or other minerals under this strip. Indeed, in one part of his testimony he admits that he has already conveyed away the mineral rights in part of his farm. Whether this part is under the strip involved is not disclosed by this record. If this strip were absolutely taken in fee by the appellant, the appellee would lose but one-half acre from his farm, and in the light of the testimony in this case, even that of appellee's witnesses, $500 an acre is the outside price which this bottom land would bring, so that the sum of $250 would be ample compensation for the absolute taking of this one-half acre. However, this strip is not absolutely taken, for, subject to the rights of the appellant above set out, the appellee may make such use of the land as he desires. The rights of the appellant do not prevent appellee's passage from one part of his land to another. He may even farm this strip, subject, it is true, to appellant's right of patrol, repair, and the remote possibility of laying another pipe line through it. It is true that some of appellee's witnesses, when asked the formal question as to what was the value of the appellee's farm before and after the taking of this easement, fixed such values as would make the difference far in excess of the verdict awarded by the jury; but these witnesses were neighboring farm owners, not experts in these matters, and as they gave no facts to substantiate their estimates of value, their conclusions can make but little headway against what the record discloses to be the necessary conclusions from undisputed facts. L. & N. R. Co. v. Burnam, 214 Ky. 736, 284 S. W. 391.

In view of these considerations, we are constrained to hold that the verdict is grossly excessive, for which reason the judgment of the lower court is reversed, with directions to grant the appellant a new trial in conformity with this opinion.