## Warfield Natural Gas Company v. Wright et al.

(Decided March 11, 1930.)

KIRK, KIRK & WELLS for appellant.

C. P. STEPHENS and B. M. JAMES for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Appellant is a corporation engaged in the production, transportation, and sale of natural gas in towns in Eastern Kentucky. In 1927 it undertook to construct a 20-inch pipe line from the Beaver Creek field in Floyd county to a point near Kenova in the state of West Virginia. Appellees were the owners of a tract of land on the waters of Bull Creek in Floyd county, through which land appellant sought a right of way, but was unable to agree with appellee as to compensation to be made. Consequently, it filed in the county court of Floyd county a proceeding asking for the condemnation of the right of way over the land of appellees. The jury in the circuit court awarded appellees damages in the sum of $1,500 for the easement. The pipe line ran through the land of appellees a distance of 2,809 feet. In addition to the easement for the laying of the pipe line, appellant sought an easement for the erection of telephone poles along the side of the pipe line. The amount of land actually taken by the easement was $1^3/_{10}$ acres. The pipe line was buried, and the only part of the easement permanently occupied to the exclusion of the use of the owners was that occupied by the telephone poles.

It is claimed that the pipe line was laid through the most valuable part of the land of appellees; that is, through bottom land. The proof tended to show that in the work which was done by appellant in the laying of the pipe line and the erection of the telephone poles about

sixty bushels of corn were destroyed. It is also insisted that some fencing was destroyed, but the destruction of fencing appears to have been no more than the cutting of the fence at two points where the pipe line passed through the fence.

The testimony is not satisfactory as to the value of the easement. One of the appellees testified that he had been offered $2,000 an acre for some of his land. That is not a proper measure of the value of the land taken by the appellant. It may be true that, by reason of a particular need that some one has for the land, or some special purpose, a purchaser may be compelled to pay many times what the land was worth, but that would not establish the value of the land. The value of the corn destroyed was easily ascertained. It is only claimed that sixty bushels of corn were destroyed. The cutting of the fence did a little damage, but the amount of that was measured by the cost of putting the fence in as good condition as it was, which would have been a matter of small concern. There was some evidence tending to show that the pipe line was not properly buried, and the damage on that score should have been measured by the reasonable cost of burying the pipe line. These items, in the aggregate, could not have amounted to a large sum, according to the evidence describing the conditions. The only other item of damages that could have been considered was the difference between the value of the strip of land taken burdened with the easement and the value of the same strip of land without the easement. From the evidence in the record, there is nothing to indicate that there could have been any damage to the residue of the tract. The easement did not prevent the cultivation of the land or the use of it by the owners. The evidence should have been directed on that point to the depreciation of the particular strip of land in the ordinary use of it that could have been made by the owners. If the strip could be used by the owners the same as before the pipe line was buried, and it would produce as much with the pipe line under the ground as without its being there, it follows that the damages occasioned by the laying of the pipe line were small.

The telephone poles may interfere somewhat with the cultivation of the land in addition to occupying a small part of the land. The value of the part so occupied

probably should be treated as permanently taken from the owners, and its reasonable value was a recoverable item of damages. The use of the land of which appellees were deprived by the erection of the telephone poles may not be confined to the actual amount of land occupied by the poles. It may be that a small area around each pole is not susceptible of cultivation because of the inability of the owner to properly till his land around the poles. Some inconvenience resulting in damages may result to the owners by reason of the erection of the poles.

In a case such as this it is not sufficient if the testimony goes no further than to show by the opinion of witnesses that the land was worth so much without the easement and a lesser sum with the easement. That may be the true measure of damages, but separate items must be considered in establishing the difference in the value of the farm with and without the easement. The quantity of land taken, its suitability for cultivation with and without the easement, any damage to the residue of the tract, any damage occasioned to the land in laying the pipe line and erecting the telephone poles, and other direct damages occasioned, should be testified about in a manner that a jury may be able to arrive at a conclusion itself as to the difference in the value of the land without and with the easement. If a witness should testify that a farm was worth $10,000 without an easement in it, and only worth $8,000 with an easement in it, the witness must be in a position to tell the jury what items go to make up the $2,000 difference, and, if he is unable to do so in an intelligent way, his evidence does not weigh heavily.

It is suggested that appellant not only has the easement for the laying of the pipe and the erection of the telephone poles, but that it has the right of ingress and egress. That is true, and something should be allowed for that, but, according to the very nature of the case, it is difficult to fix a definite sum. If the appellant should use the right of way in making repairs without causing appellees any damages, they would have no reason to complain, but, if the occasion should arise, and it should become necessary for appellant to use any part of the land not occupied by the easement in exercising the right of ingress and egress, that is a matter that could be taken care of when the occasion should arise.

The evidence in this case tends very strongly to show that the witnesses for appellee thought that the land was taken by appellant absolutely, and that appellees would have no right in the land covered by the easement, but that is an error.

There have been a number of recent cases dealing with the question of damages in condemnation proceeding such as this, among which are Kentucky-Tennessee Light & Power Co. v. Shanklin, 219 Ky. 279, 292 S. W. 790; Kentucky Utilties Co. v. Hunt, 221 Ky. 723, 299 S. W. 562; Kentucky Hydro-Electric Co. v. Woodard, 216 Ky. 618, 287 S. W. 985.

There is some complaint about the ruling of the trial court on the burden of proof. The rule is well known that the one who would lose if no evidence should be introduced is the party having the burden of proof. In this case both parties appear to have filed exceptions to the report of the commissioners, and the trial court entered an order to the effect that the party filing exceptions first should have the burden of proof, and it appears that he allowed appellees to open the argument and have a five minutes' argument in conclusion, if they should elect so to do, or appellees were given the right to have the appellant open the argument with the right to a five-minute close after counsel for appellees had made their argument. Under the authority of the opinion in the case of Warfield Natural Gas Company v. Hammons, 233 Ky. 48, and the cases therein cited the burden of proof was on the condemnor and the court should have so adjudged.

The verdict in this case is flagrantly against the weight of the evidence, and for that reason it must be reversed.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.