## Kentucky-West Virginia Gas Company v. Hays.

(Decided March 24, 1931.)

190

HARKINS & HARKINS for appellant.

JOHN C. HOPKINS and EDWARD P. HILL, Jr., for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

The Kentucky-West Virginia Gas Company, hereinafter referred to as the company, by condemnation proceedings in Floyd county court sought to condemn a strip of land 16 feet wide and 1,853 feet long, for right of way for a gas pipe line and a telephone line on and under the lands of F. P. Hays.

Commissioners appointed by the county court fixed the entire damage to the tract of land at $197.57. A trial, on exception of Mr. Hays to the commissioners' report resulted in a verdict fixing his damages at $500. The company appealed to the circuit court, and a jury rendered a verdict for the same sum as did the jury in the county court, and the company is here on appeal.

In the brief of the attorney for appellant it is argued: (1) That the verdict of the jury is excessive; (2) that the court erred in refusing to admit competent testimony offered by the company; (3) that the court erred in the instructions given to the jury.

The farm of appellee contains, according to his own statement, 83 or 84 acres, and is located on Mud Lick, a branch of Brush creek. The greater portion of this tract is hill land, but the remainder is called level or bottom land, and is valuable for agricultural purposes. The evidence showed that the company had laid two pipe lines which cross at right angles in the bottom or level land. One of the lines is a 12-inch pipe and the other a 6-inch pipe.

The company introduced as witnesses the commissioners appointed by the county court and certain of its

employees. None of these fixed the damages to appellant's farm in excess of $200.

Mr. Hays claimed and attempted to show by evidence that the company's lines crossed at right angles over a site which he had selected for a residence. One of the lines ran between the well and the place where he proposed to build a home, one through the orchard, and one or both of the lines ran through the garden spot. He also claimed that, in constructing its lines under the hill land, large quantities of rock were blasted out and thrown over his lands; that the company had cut a line of trees left on the hill as posts to which a fence was to be attached; also that his lands had been damaged by the company in hauling pipe over it. He estimated the damages to his lands at from $800 to $1,000, and other witnesses who testified in his behalf estimated the damages at amounts ranging from $600 to $1,000. Mr. Hays fixed the value of the tract before the construction of the pipe lines at $4,000, and at from $3,000 to $3,200 after the company acquired the easement. He admitted on cross-examination that his farm was assessed for taxation at $800. While Mr. Hays and witnesses fixed the total amount of the damages to his farm, none of them were specific as to the various items of damage claimed by him. They did not attempt to fix the value of the timber alleged to have been cut in the construction of the line and, while they testified as to rock being thrown over the land by blasting, none of them testified as to the damage he sustained or the quantity of stone thrown over and on his land. One witness, being asked as to the quantity of land over which it was thrown, gave it as about 50 yards, but it does not appear whether he meant 50 square yards of land or whether stone was thrown for at least 50 yards on each side of the excavation where the blasting was done. Neither is there any evidence as to the damages done to his land by reason of hauling the pipes over it. One witness did state that, in dragging or snaking the joints up the hillside, trenches were made which caused water to accumulate and wash the land, but he made no estimate of the damage done by this washing.

A witness for the company stated that he counted the trees cut from the right of way for the pipe line and gave the number as 10 and fixed their value at $10. He was not contradicted in this statement. One of the witnesses for Mr. Hays stated that he cleared the hillside for Mr. Hays and left the row of trees for fence posts.

He was unable to give the numbers of trees, but gave as his recollection that there were not over 12 of them, and indicated that the largest was a poplar about 14 inches in diameter.

As we must reverse the judgment of the lower court because of the excessiveness of the damages awarded, we shall first briefly discuss the other questions raised by appellant's counsel. In the court below, counsel for the company attempted to show by D. S. Kennon, the company's land agent, the price paid by different gas companies for similar rights of way over lands of the same character and kind as the farm of Mr. Hays. The court refused to admit the evidence, and it is urged that this evidence is admissible and competent under the rule laid down in Kentucky Hydro-Electric Company v. Woodward, 216 Ky. 618, 287 S. W. 985, 988, and the cases therein cited. In the case of Warfield Natural Gas Company v. Laferty et al., 232 Ky. 248, 22 S. W. (2d) 611, this court said that on another trial, the court should exclude evidence as to cost of acquiring right of way by contract. We do not think the evidence offered to be introduced sufficiently measures up to the requirements to render it admissible or competent under the rule laid down in the cases cited and relied upon by counsel.

We have carefully considered instruction No. 1, given by the court below and criticised by counsel, and find that it aptly submits to the jury the issues to be considered by them in making up their verdict.

Coming to a discussion of the amount of damages awarded by the jury, we might say, in passing, that, while this court is not inclined to disturb the verdict of juries when based on substantial evidence, yet in recent cases the court has not hesitated to hold damages excessive where clearly contrary to the weight of evidence, and this even though the amount in controversy be small.

In the case of Warfield Natural Gas Company v. Wright, 233 Ky. 378, 25 S. W. (2d) 1036, it appears that the jury in the lower court awarded the landowner $1,500 for an easement for laying a gas pipe line a distance of 2,809 feet. The amount of land actually taken by the easement was 1-3/10 acres, and in that case, as in this, the pipe lines were buried. This court held that the verdict in that case was flagrantly against the weight of evidence, and for that reason reversed the judgment of the lower court. It was pointed out in the opinion that appellee testified he had been offered $2,000 an acre for

some of his land, but the court said the evidence is not sufficient if it goes no further than to show what the land would be worth without the easement and a lesser sum it would be worth with the easement; that, while the difference in value before and after taking might be the measure of damages, the separate items going to make up the difference should be testified about in such a manner that a jury might be able to arrive at its own conclusion as to the value of the land with and without the easement and the evidence of a witness who is unable to testify intelligently as to the different items going to make up the damages does not weigh heavily.

In the case of Warfield Natural Gas Company v. Laferty, supra, this court held a verdict for damages in the sum of $240 as excessive. In that case the strip of land taken was 20 feet wide and 1,146 feet long, and contained 53/100 acres. The pipe line was buried except for a hundred feet, where it was exposed. Mr. Laferty fixed the market value of the farm, as before and after the taking for pipe line purposes, at $2,000 and $1,500, respectively. There was evidence that the company took up two apple trees and injured others, tore down the fencing in two different places, and rolled possibly three or four wagon loads of rock down on his land. The evidence at to the value of the Laferty land varied, but none of the witnesses fixed the value of the entire tract in excess of $3,000. See, also, Kentucky Utilities Company v. Hunt, 221 Ky. 723, 299 S. W. 562, and the cases therein cited, and the Petroleum Exploration v. McGeorge, 225 Ky. 131, 7 S. W. (2d) 821, and cases therein cited.

In this case, the highest value fixed on Mr. Hays' tract of land was $4,000. Less than one acre is taken for this easement, and little more than was taken in the Laferty case, supra. Under the highest value fixed on this land, the strip taken for this easement would be worth considerably less than $100, and the owner is not deprived of the use of his land, but may cultivate and use it, subject to the easement of the company. In this case, as in the cases hereinbefore cited, the landowner and his witnesses seemed to be under the impression that a fee in the strips of land is taken, but such is not the case.

While the company has not done so, it may construct a telephone line. If it does, only the land occupied by its poles will be actually taken. The construction of this

194

line will in a small measure interfere with the cultivation of the lands, however, only such small machinery as ordinary plows and mowing machines will likely ever be used in cultivation and harvesting crops on this land, and the inconvenience in the use of such machinery because of the telephone poles, if they are erected, will be negligible.

The only other item entering into the alleged damages on which there has been direct evidence is as to the value of the trees cut, and a witness for the company fixed their value at $10. Evidence as to the other items is vague and indefinite and gives no substantial basis on which to rest damages.

From the evidence in this case, it clearly appears that the verdict of the jury is excessive, and, following recent decisions of this court hereinbefore cited, the judgment of the lower court must be and is reversed, and this cause is remanded for a new trial and further proceedings consistent with this opinion.