## Warfield Natural Gas Co. v. Montresso et ux.

(Decided June 25, 1937.)

KIRK & WELLS and HAROLD A. RITZ for appellant.

E. J. PICKLESIMER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and defendant below, Joe Montresso, owns a tract of land containing 100 acres, located on Meathouse fork of Big creek in Pike county, Ky., upon which he and his wife, the other defendant, reside. Appellant and plaintiff below, Warfield Natural Gas Company, instituted this condemnation proceeding against defendants to condemn a right of way through the farm owned by the husband of 20 feet width and 1,798½ feet in length at least one half of which was located over the foot of the mountain and outside of bottom land, while the other half was through the latter type of land—the entire strip containing only 82/100 of an acre. The uses to be made of this strip was the sinking therein of an 8-inch gas pipe about 3 feet under the surface and with the right to construct a line of telephone poles thereon if plaintiff saw proper to do so. None of the latter have been erected and under the proof they may never be, but the pipe has been laid in the manner indicated.

The county court appointed viewers who reported defendants' damages at $109. Defendants filed exceptions to that report on the ground of alleged inadequacy of damages, but steps were taken by plaintiff to mature its right to take charge of the strip and construct its pipe line as was later done. Upon the trial of the exceptions in the county court before a jury selected for the purpose it returned a verdict in favor of defendants for the sum of $500, and from the judgment rendered thereon plaintiff appealed to the Pike circuit court. The trial in that court resulted in the same verdict, and plaintiff's motion for a new trial having been overruled, it prosecutes this appeal urging as the sole ground for a reversal the excessiveness of the verdict.

Plaintiff testified that he was damaged, by the laying of the pipe line underground as stated, in the sum of $5,000, although he admitted that he used the surface for all purposes up to the date of the trial, except that he had erected no buildings over the line or on any portion of the condemned strip. Several witnesses for plaintiff testified that so far as outward appearances were concerned, and with the right of the owner to cultivate the condemned strip and to use the surface thereof in any manner not inconsistent with the acquired rights the damages were nominal. Defendant and his witnesses (the latter of whom estimated the damages all the way from $500 to $2,000) each and every one testified that their estimates were based upon the theory that plaintiff as condemnor acquired the fee-simple title to the condemned strip, with the right to fence it off from other portions of defendants' farm and to thereby sectionize it and which, of course, would entail much greater damage than if the right of such separation did not exist—the latter of which was and is true. However, when defendant and his witnesses (all of whom were his neighbors) were confronted with the explanation that no such consequent rights with corresponding deprivation existed, they still stuck to their story that the damage they had previously estimated on the false theory was correct.

A neighbor witness for defendants valued his farm at $35 per acre for the whole of it—which, of course, was $3,500—yet he stated that he was damaged $1,500 more than the entire value of his farm as fixed by that witness. Such extravagant testimony can have but little influence with a fair and impartial tribunal. When

pressed for facts sustaining their opinions, plaintiff's witnesses urged the fee-simple acquisition of the strip by defendants as hereinbefore referred to, plus another fact which was—that the laying of the pipe across a small stream as was done would interfere with plaintiff marketing some timber farther away from the strip through, upon or over that branch, if he should ever see proper to do so. But the uncontradicted testimony in the case shows that the obstruction that the witnesses pointed out, as having been created by the laying of the pipe across the branch, could be easily and cheaply remedied, and which plaintiff agreed to do at the trial of the case.

We, therefore, see that plaintiff's entire testimony was of the unstable and incredible nature as that contained and condemned in the cases of Warfield Natural Gas Co. v. Laferty, 232 Ky. 248, 22 S. W. (2d) 611; Warfield Natural Gas Co. v. Wright, 233 Ky. 378, 25 S. W. (2d) 1036; Warfield Natural Gas Co. v. Alley, 233 Ky. 323, 25 S. W. (2d) 724; Warfield Natural Gas Co. v. Hammons, 233 Ky. 48, 24 S. W. (2d) 933, and Kentucky-West Virginia Gas Co. v. Hays, 238 Ky. 189, 37 S. W. (2d) 17, and wherein we disapproved verdicts based upon the same character of testimony, which we denominated in those cases as ''fantastic.'' That description is applicable to plaintiff's testimony in this case. An example of our appraisement of it, as contained in the Laferty opinion, is: ''While the question of damages in a condemnation proceeding is for the jury, and its verdict will not be set aside as excessive when supported by substantial evidence, we are committed to the rule that opinions as to values without facts to support them * * * are of little value, and may be in a large measure ignored.'' Similar condemnatory statements are to be found in the other cited cases. Without lengthening this opinion, we unhesitatingly conclude that the argued ground for a reversal of the judgment is meritorious, and that the court should have sustained plaintiff's motion for a new trial as based solely upon it.

Wherefore, the judgment is reversed, with directions to sustain the motion for a new trial and to set aside the judgment, and for other proceedings consistent with this opinion.