Louise B. STEWART et al., Appellants,

v.

COMMONWEALTH of Kentucky, for the Use and Benefit of the DEPARTMENT OF HIGHWAYS, et al., Appellees.

Court of Appeals of Kentucky.

June 17, 1960.

Rehearing Denied Sept. 30, 1960.

Robert E. Hatton, Louisville, for appellants.

Marshall B. Woodson, Jr., Louisville, for appellees.

PALMORE, Judge.

This appeal is by the landowner from a judgment awarding $63,000 as the value of her property condemned by the appellees; the Commonwealth and City of Louisville, in the acquisition of right-of-way for the North-South Expressway in Louisville. She claims that the award was inadequate and resulted from prejudicial errors in the exclusion of certain evidence relating to sales of comparable property. The excluded evidence may be reduced to three categories, as follows:

(1) Prices paid by the condemnor for similar property in the same general location for the same project at approximately the same time. (Excluded on the ground that sales of land subject to condemnation to the proposed condemnor are not admissible evidence.)

(2) Testimony of R. J. Stewart, a qualified real estate expert, as to the prices paid for property some three blocks away, which the witness claimed to be comparable property and had purchased for a syndicate intending to raze the improvements and construct a motel. (Excluded mainly because the witness had not inspected the interior portions of the buildings and therefore, the trial court felt, was not in a position to prove comparability.)

(3) Testimony of John M. Hennessy, a qualified real estate expert, as to the same prices about which the witness R. J. Stewart was not permitted to testify. (Excluded on the ground that Mr. Hennessy's information was based on hearsay.)

Though in some jurisdictions prices paid by the condemnor for other similar properties are admissible in evidence, the weight of authority appears to be otherwise. Nichols on Eminent Domain (3d ed.), Vol. 5, § 21.33. This court has held consistently that such evidence is not competent. Chicago, St. L. & N. O. Ry. Co. v. Ware, 1927, 220 Ky. 778, 295 S.W. 1000; Com., by State Highway Commission v. Combs, 1929, 229 Ky. 627, 17 S.W.2d 748; Louisville & N. R. Co. v. Johnson, 1930, 233 Ky. 628, 26 S.W.2d 535. Likewise, prices paid by other prospective condemnors for comparable property have been held inadmissible. Kentucky-West Virginia Gas Co. v. Hays, 1931, 238 Ky. 189, 37 S.W.2d 17; United Fuel Gas Co. v. Mauk, Ky.1954, 272 S.W.2d 810.

Appellant suggests that each of the Kentucky cases on the point involved the taking of something less than the entire property affected, resulting in damage to the remainder, and that the real rationale of these decisions is that residual damages are by nature so dissimilar from one property to another that they are not susceptible of practical comparison. The fact is, however, that a sale to a prospective condemnor lacks the elements of a free and voluntary transaction. "The reasoning which forbids consideration of forced sales generally, renders it incompetent for either party to put in evidence the amount paid by the condemnor to the owners of neighboring lands taken at the same time, and as part of the same proceedings, however similar they may be to that in controversy and whether the payment was made as the result of a voluntary settlement, an award, or the verdict of a jury." Nichols on Eminent Domain (3d ed.), Vol. 5, p. 296 (§ 21.33).

■ In those states where such evidence is not presumptively incompetent the preliminary question of whether the transaction was so tainted by compulsion as to influence the price, and therefore to destroy its usefulness as a standard of value, must be determined by the trial court in the same manner as the trial court must likewise find sufficient similarity and likeness of conditions between the respective properties before evidence of the comparable sale is admitted. Ibid. We think that such an inquiry into the matter of motivation ventures too far into the realm of speculation and is not a satisfactory substitute for the rule of nonadmissibility. We therefore adhere to the latter rule.

■ It is urged that the landowner (but not the condemnor) ought to be allowed to show prices paid by the condemnor for

other similar property for the special purpose of securing the guaranty of equal protection of the laws under the 14th Amendment of the federal Constitution. However, no authorities are cited, nor do we find any, to sustain this viewpoint.

The property concerned in this case consisted of two large brick residential buildings 60 to 70 years old at the southwest corner of Brook and College Streets, fronting on College. The corner building had been converted to office space with off-street parking facilities and a concrete block warehouse addition. The second building had been converted into four residential apartments.

The witness R. J. Stewart, a nephew of the appellant, is engaged in the real estate business and is a qualified appraiser. In December of 1958, just after the inception of this proceeding, he had acted as agent in the purchase of three residences on the east side of Second Street between College and Jacob Streets, being two blocks west and a fractional block north of the appellant's property, and in April of 1959 had purchased, in the same capacity, a fourth piece of residential property on the same block as the three acquired in December of 1958. His principals were not interested in the improvements, which were to be wrecked, and the witness "didn't even bother to inspect the buildings before purchasing them." However, in his avowal he testified that the Second Street properties were all residences converted to multi-family usage, of about the same vintage as appellant's property, situated on smaller lots but sufficiently similar in all essential respects to appellant's property to constitute comparable property according to his interpretation of appraisal practice. His testimony as to the prices paid was excluded on the ground that there was not a satisfactory showing of comparability.

■ Exact comparability between different parcels of improved real estate being virtually nonexistent, the introduction of so-called comparable sales nearly always injects collateral issues as to the degree of similarity or dissimilarity. For this reason some courts have not permitted such evidence. In this jurisdiction, however, actual sales of other reasonably similar property have been firmly established as competent and probative evidence. See City of Paducah v. Allen, 1901, 111 Ky. 361, 63 S.W. 981. "Except in a few jurisdictions, this class of evidence is received." Wigmore on Evidence (3d ed.), Vol. II, p. 505 (§ 463). "If the admission of such evidence is regulated with reasonable judgment by the presiding justice, it throws light upon the issue as nothing else can * * * The disadvantages arising from the use of such evidence are more than compensated for by the benefits which are likely to come to the jury from its reception." Nichols on Eminent Domain (3d ed.), Vol. 5, p. 277 (§ 21.3).

■ The preliminary question of whether the respective properties are susceptible of practical comparison is similar to the question of sufficiency of a witness' qualification as an expert, in that each must be determined by the trial court precedent to the introduction of the main testimony to which it pertains. In some courts this determination is treated as factual and may not be disturbed on review unless "clearly erroneous." See Aycrigg v. United States, D.C.N.D.Cal.1954, 136 F. Supp. 244, 251, and cases therein cited. Since, however, the initial determination is to be made on the basis of undisputed testimony, and does not represent a choice between conflicting evidence or presumptions, we deem it a ruling of law, reviewable as such.

Now, did the fact that the witness had not inspected the houses on Second Street and did not know the kind and condition of heating and plumbing systems, roofing, etc., coupled with the fact that there were certain known dissimilarities, particularly between that property and appellant's property at the corner of Brook and College, disqualify the proposed testimony? We think that it did not.

■ "Property similarly situated need not exactly conform to the property in suit. When property, on the same or an adjoining street, is described as bearing a close resemblance, or nearly corresponding, to the one in question as to improvements, size, location, general adaptability, and within the same business center, it may be said to be similarly situated. There can be no fixed definition of 'similarly situated.' Similarity does not mean identical, but having a resemblance. Obviously, no two properties can be exactly alike, and no general rule can be laid down regarding the degree of similarity that must exist to make such evidence admissible." Nichols on Eminent Domain (3d ed), Vol. 5, § 21.31.

■ Accepting the foregoing comment as correct, it is our opinion from the information contained in the record that the Second Street property was shown to be of sufficient similarity for purposes of comparison. It was in a reasonably comparable location in the same general neighborhood as the property in suit. The buildings were all of the same era, originally large brick residences but since converted to apartments except for the Stewart property at the corner of College and Brook, which probably had been improved to a higher degree than any of the Second Street lots. The lot sizes on Second Street were not just the same, being, respectively, 40 x 200, 60 x 200, 40 x 200, and 100 x 200 as against 100 x 131.5 and 80 x 200 for the Stewart property, by virtue of which differences the reduction of values into a common denominator of front footage results in some degree of distortion (which is, of course, but another way of saying that there is some degree of dissimilarity) on account of the disproportionate weights of the building values. This, however, should not be fatal to a comparison, nor should it be fatal that the purchasers of the Second Street property were interested in the ground only. For example, if it had sold for $800 per front foot as vacant lots, that fact would be probative evidence having a bearing on the value of the Stewart property. This

would always be true in a case where the value of the ground itself represents the major factor in the value of the property as a whole. Although we are here concerned with city property, it is analogous to the situation of farm property in that the major value is in the land rather than the improvements, and if evidence of comparable sales were excluded because the witness had not examined the interior portions of the improvements this type of evidence would be unduly restricted.

■ As said in City of Paducah v. Allen, 1901, 111 Ky. 361, 63 S.W. 981, 983, and quoted in Nichols on Eminent Domain (3d ed.), Vol. 5, p. 275 (§ 21.3), actual sales of comparable property, "when made under normal and fair conditions, are necessarily a better test of the market value than speculative opinions of witnesses; for, truly, here is where 'money talks.'" Therefore, where the properties are reasonably similar, and a qualified expert states his opinion that they are sufficiently comparable for appraisal purposes, it is better to leave the dissimilarities to examination and cross-examination than to exclude the testimony altogether. The prices paid for the Second Street properties were the highest comparable sale prices available. On a front footage basis (which has its obvious limitations, but is of some value as a common denominator) they were more than double the amount awarded by the jury for the Stewart property. Under the circumstances we cannot say that the error in excluding this evidence was not prejudicial.

The witness John M. Hennessy appraised the Stewart property on the basis of land value alone. He proposed to support his opinion by discussing, inter alia, the prices paid for the Second Street properties just mentioned, but was not permitted to do so because his information was founded on hearsay. The question thus raised is of first impression in this jurisdiction.

■ It was correctly pointed out in Commonwealth v. Begley, 1938, 272 Ky.

289, 114 S.W.2d 127, that evidence of comparable sales is admissible on two theories, (1) as independent substantive evidence of the value of the property to which the comparison relates, and (2) as foundation evidence supporting the opinion of the expert witness. If it were admissible only on the first of these theories there would certainly be no reason why the hearsay rule should not apply. See Nichols on Eminent Domain (3d ed.), Vol. 5, p. 278 (§ 21.3). In fact, it applies in some jurisdictions regardless of the purpose for which it is sought to introduce the testimony (except, possibly, on cross-examination to test the knowledge of a value-witness, cf. Wigmore on Evidence, 3d ed., Vol. II, § 464, and Nichols on Eminent Domain, 3d ed., Vol. 5, § 21.3, p. 277). See Wigmore on Evidence (3d ed.), Vol. III, § 719; United States v. Katz, 1 Cir., 1954, 213 F.2d 799, certiorari denied 348 U.S. 857, 75 S.Ct. 82, 99 L.Ed. 675; City and County of Denver v. Quick, 1941, 108 Colo. 111, 113 P. 2d 999, 1002, 134 A.L.R. 1120. Where the hearsay rule applies, the rationale is best expressed by the following extract from the opinion of Mr. Justice Holmes (then Chief Justice of the Supreme Judicial Court of Massachusetts) in the case of National Bank of Commerce v. City of New Bedford, 1900, 175 Mass. 257, 56 N.E. 288, 290:

"An expert may testify to value, although his knowledge of details is chiefly derived from inadmissible sources, because he gives the sanction of his general experience. But the fact that an expert may use hearsay as a ground of opinion does not make the hearsay admissible."

The more liberal rule, however, treats the hearsay exclusion as inapplicable to expert witnesses, as thus stated by Judge Parker in United States v. 5139.5 Acres of Land, etc., 4 Cir., 1952, 200 F.2d 659, 662:

"If the expert has made careful inquiry into the facts, he should be allowed to give them as the basis of the opinion he has expressed. If he had not made careful inquiry, this will be developed on cross examination and will weaken or destroy the value of the opinion. Ordinarily evidence as to acts of this sort given by an expert as the basis of his opinion comes with a sufficient guaranty of trustworthiness to justify the relaxation of the hearsay and best evidence rules."

To the same effect, see International Paper Co. v. United States, 5 Cir., 1956, 227 F.2d 201; District of Columbia Redevelopment Land Agency v. 61 Parcels of Land, 1956, 98 U.S.App.D.C. 367, 235 F. 2d 864; and 32 C.J.S. Evidence § 545, p. 293.

It is quite often true that the most thorough, comprehensive and accurate professional appraisals are based almost entirely on "hearsay" in the legal sense of the word. Persons who appraise or deal in real estate professionally make it their business to keep abreast of current transactions. The value of an appraisal depends very largely on the manner in which it is developed. It is of importance to the court and jury to know how it was made and on what information it was based. If some or all of that information was acquired by hearsay, but through the customary channels of the trade, or by methods recognized as standard in the making of appraisals, we see no useful purpose in a rule of absolute exclusion. Therefore, confining the effect of this opinion to witnesses whose qualifications include experience in appraising or dealing in real estate *as a business,* we hold that testimony as to the prices paid in comparable sales is not inadmissible merely because it is secondary or hearsay evidence. Since Mr. Hennessy was professionally qualified as an appraiser and real estate broker, the fact that he had verified the prices by personal contact with the purchasers was a sufficient basis to admit his testimony on the comparable sales.

The judgment is reversed with directions that a new trial be granted.