COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Howard McGEORGE, Sr., et al., Appellees.

Court of Appeals of Kentucky.

June 28, 1963.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Phillip K. Wicker, Somerset, for appellant.

J. C. Helton, Pineville, for appellees.

PALMORE, Judge.

The Highway Department appeals from a judgment entered pursuant to a jury ver-dict in a condemnation proceeding awarding Howard McGeorge and wife $2,000 for .78 acres taken from their 9.8-acre tract of land and $1,000 for damages to the remainder by reason of the taking.

The tract in question fronts about 600 feet on the south side of U. S. Highway 119 in Bell County and runs back a depth of some 880 feet to the Cumberland River. It is bottom land and lies several feet below the level of the highway, falling away from the road so that a southward relocation of the right-of-way will result in a greater difference in level between the land and the new road than existed with respect to the former frontage. This increase in height of fill was the only basis for the landowners' evidence of damage to the value of the remainder tract.

The landowners were permitted over objection by the condemnor to show for comparative valuation purposes a fairly recent transaction in which the Bell County Board of Education had negotiated for and bought a nearby 10-acre tract of similar land for $11,000. The admissibility and possible prejudicial effect of this evidence are a main issue on appeal.

There was competent evidence that bottom land of the type here concerned had a market value of $1,000 per acre and that the portion of the McGeorge property fronting on the highway was suitable for residential building purposes and had a market value of $1,000 per 100 front feet. According to the testimony, 413 feet of the 600-foot frontage is being taken.[1] On this basis it was estimated in behalf of the owners that the land taken had a fair market value of $4,000. Witnesses for the condemnor valued the whole tract before the taking at $500 per acre and, apparently giving no higher value to the highway frontage (because it lay several feet below the road surface and, in their opinion, was not

---

1. From the official map filed as an exhibit it would appear, however, that approximately 450 feet on the old road is being taken and that 413 feet represents the figure to which this particular portion of the frontage will be reduced when the highway is straightened and moved southward.

suitable for residential purposes), estimated the .78-acre strip as worth $390 plus $125 for fencing removed.

The board of education has the power of eminent domain,[2] and it is the general rule that a transaction involving a potential condemnor is inadmissible as a comparable sale, because it lacks the element of voluntariness and freedom from compulsion. "The landowner, on the one side, may force a sale; and the condemnor, on the other, must have the land, even though it costs more than its value." 5 Nichols, Eminent Domain, § 21.33, p. 468; 1 Orgel, Valuation under Eminent Domain, § 147, p. 618. See also Stewart v. Commonwealth, Ky., 337 S.W.2d 880, 882, and authorities therein cited. Rules of law, however, are based on reason, and are not necessarily applicable to cases in which their fundamental purposes will not be served. All of the decisions of this court cited by appellant in support of the exclusionary rule were cases in which one party or the other sought to show prices paid in connection with *right-of-way* acquisitions.[3] In such cases not only the seller, but the buyer as well, is under a certain amount of compulsion. Having committed itself to a certain right-of-way or a particular block of tracts, and especially after having begun the acquisition, the purchaser has compromised its freedom of choice. The exclusionary rule amounts to a conclusive presumption that prices paid do not reflect free and voluntary transactions, and in that type of case it is founded on plausible reason.

"There has been some dissatisfaction with the rule of exclusion. * * * and in some jurisdictions it has been held that such

evidence is admissible if the land was in fact similar and it was shown that the transaction was not influenced by any fear of litigation. * * *. The view has been expressed that the objection to such evidence goes to its weight rather than its admissibility. * * * In support of the view which disregards the rule of exclusion it has been argued that all sales, even those not involving a person possessing the power of condemnation, involve a compromise between vendor and vendee. Just as the court must determine similarity it should also first determine whether there was in fact freedom of contract." 5 Nichols, Eminent Domain, § 21.33, pp. 472–478. "The courts that admit evidence of sales to the condemner * * * have accordingly stated that the fact that a sale was made with a condemner as one of the parties goes to the 'effect' of the evidence and not to its admissibility." 1 Orgel, Valuation under Eminent Domain, § 148, pp. 619–620.

As it was the landowners who offered the evidence of the school board sale, the question is not whether the school board's power of condemnation influenced the price, but whether the board's freedom of choice as to location was so restricted that it was caused to pay more than the land was worth. A member of the school board familiar with the transaction and qualified to express an opinion of land values in the community testified that the sale was free and voluntary and that the market value of the property was what the board paid for it. He was neither examined nor cross-examined with respect to whether the board had a choice of other possible sites. A valuation witness for the condemnor, however, pointed out to the jury that in the

2. KRS 162.030.

3. Commonwealth by State Highway Comm. v. Combs, 229 Ky. 627, 17 S.W.2d 748 (1929); Chicago, St. L. & N. O. Ry. Co. v. Ware, 220 Ky. 778, 295 S.W. 1000 (1927); Kentucky Hydroelectric Co. v. Woodward, 216 Ky. 618, 287 S.W. 985 (1926); Kentucky-West Virginia Gas Co. v. Hays, 238 Ky. 189, 37 S.W.2d 17 (1931); Louisville & N. R. Co. v. Johnson, 233 Ky. 628, 26 S.W.2d 535 (1930); Adams v. Commonwealth, 285 Ky. 38, 146 S.W.2d 7 (1940); Commonwealth by State Highway Comm. v. Crutchfield, 261 Ky. 272, 87 S.W.2d 598 (1935); Brock v. Harlan County, 297 Ky. 113, 179 S.W.2d 202 (1944); United Fuel Gas Co. v. Mauk, Ky., 272 S.W. 2d 810 (1954); and Stewart v. Commonwealth, Ky., 337 S.W.2d 880 (1960).

selection of a location for a school a number of considerations other than price are involved. We are of the opinion that juries must be presumed intelligent enough to understand this sort of thing, and that in this case the question of whether the school board transaction was free and voluntary from the standpoint of the purchaser was a matter for the consideration of the jury.

Our previous cases following the rule of exclusion are not overruled. The rule simply does not apply hard and fast to every instance in which the purchasing party had the power of condemnation. We hold the trial court did not err in admitting the testimony in this case.

■ The award of $1,000, or any other amount, for damages to the remainder tract was unauthorized. The highest value put on the McGeorge property as a whole by any witness was $1,000 per acre. The .78-acre part taken by the condemnor was worth more than that only because it fronted on the highway. Obviously, therefore, when the jury assessed $2,000 for this .78 acres the state was paying for the frontage. Having paid for the frontage, it cannot be required to replace it with a new frontage. The state already has been charged for 100% of the access value of that portion of the frontage included in the .78 acres condemned. Thus the further award of $1,000 based upon the state's having left the owners with less or more difficult access than they had before amounted to a duplication of damages. This has been a frequent incident of assessing separate elements of damage instead of confining the inquiry simply to the difference in market value of the landowner's property as a whole before and after the taking, and is one of the pitfalls sought to be eliminated in the future by the rule set forth in Commonwealth Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963).

■ The condemnor moved to strike the valuation evidence given by certain of land-

owners' witnesses on the ground that they showed no reasonable basis for their estimates. For the same reason it is contended that the evidence does not support the verdict. This case, however, is not to be compared with Commonwealth Dept. of Highways v. Rankin, Ky., 346 S.W.2d 714 (1960), an extreme example of excessive award based on weak evidence. The witnesses in this case were competent on the subject of land values, and although testimony should be stricken when the witness on cross-examination makes it unmistakably clear that his estimates are based entirely on incompetent and improper factors, it cannot be stricken or ignored merely because he flounders a little. This is for the jury to judge.

To the extent that it awards $2,000 for the taking of .78 acres of land the judgment is affirmed. Otherwise, it is reversed with directions that no amount be allowed for damages to the land remaining in appellees' ownership.