COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

June CAUDILL et al., Appellees.

Court of Appeals of Kentucky.

March 19, 1965.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Reed D. Anderson, Madisonville, for appellant.

Ralph N. Walter, Nickell & Walter, West Liberty, for appellees.

PALMORE, Judge.

This is a condemnation case in which the highway department has acquired 5.76 acres of a 70-acre tract of land at the southwest edge of West Liberty, county seat of Morgan County, incident to widening, straightening and re-grading U. S. 460 as it leads from the city up and over Index Hill toward Frenchburg. The highway bisects the property, as it did before the improvement project, and the taking embraced an area bordering each side of the road along a distance of some 1400 or 1500 feet. Also included within the taking were a tenant house and ramshackle coal shed. In a trial held under pre-Sherrod [1] practice the jury awarded $5,000 for the land taken and $3,000 for damages to the remainder.

Witnesses for the landowners testified that the property fronting both sides of the highway had commercial value, though its development would have required filling on one side and excavating on the other. They cited recent instances in which hillside lots on the other side of town fronting 150 feet on the same highway had sold for $6,000 each and had been thereafter prepared for commercial use by cutting into the hill. It was their opinion that the property in question, which lies partially within the city limits, was equally adaptable and equally desirable for commercial purposes. Their estimates of value were founded very largely on that premise.

The state's first contention is that its motion to strike testimony relating to the commercial potential of the property should have been sustained because it was not shown that the land was reasonably adaptable to commercial development and

---

1. Commonwealth, Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963).

that there was a probability that it would have been put to such use in the near future. We are unable to agree. The fair import of the testimony was that the frontage was currently salable for commercial purposes. Moreover, it seems to us that in the absence of evidence to the contrary any unzoned land fronting a main highway at the edge of a city or town, if reasonably adaptable to building purposes, would be presumed to have commercial value.

█ A closely related argument is that the comparable sales to which we have alluded should not have been admitted in evidence, because the property sold was not reasonably similar. It is true that a town lot and a 70-acre farm, as a whole, are dissimilar, but if there is a market for the sale of lots off the farm on an "as is" basis, certainly it is proper to show what prices have been paid for similar lots in comparable locations. Witnesses qualified as experts indicated that the property sold as lots in or near the city limits at the opposite end of town was of the same type and character and otherwise comparable with those portions of the Caudill farm bordering the highway. We think this was a sufficient showing of comparability. Cf. Commonwealth, Dept. of Highways v. Finley, Ky., 371 S.W.2d 854 (1963).

The witnesses did testify to one sale of a lot on Water Street or Riverside Drive in West Liberty without so much as being asked whether it was comparable. In fact, the only suggestion of comparability was that the lot was the same distance from Licking River (on the other side) as the Caudill home. This, of course, is about like equating Standiford Airport or the Kentucky State Fairgrounds with some of the knobs across the Ohio River in Indiana. However, there was neither an objection nor a motion to strike.

All of the improvements and the greater portion of the farm in question are on the southeast side of the highway, 20 acres of unimproved and unused hill land being across the road on the northwest side. There is a coal vein of questionable value in this 20 acres, and years ago some of it was mined. At that time there was a usable entranceway into the 20 acres from the highway, but after the mining operation ceased the highway department cut a ditch through it, so that as of the time this condemnation proceeding was begun there was no actual means of access to the 20 acres.[2] However, an engineer testifying for the landowners testified that in spite of the ditch an approach could have been re-established with very little difficulty, whereas it will now be impossible (without, at least, an encroachment permit) because the state's plans call for a concrete conversion ditch running parallel with the highway just beyond the top of the cut, which at the site of the old entranceway will be some four feet high. Hence the 20-acre tract is virtually landlocked, and that is one of the factors the owners' witnesses took into consideration in estimating the amount of resulting damages.

A motion to strike the loss-of-access testimony was overruled. The state takes the position that the owners had no actual means of access to begin with, hence they lost none by reason of the condemnation and, further, "that so long as the landowner retains reasonable access to the highway system by the same means available to him as before the taking, * * * the difficulty of access created by 'cuts' and 'fills' on the new road is not a proper damage factor," etc., citing Commonwealth, Dept. of Highways v. Raybourne, Ky., 364 S.W.2d 814 (1963).

Accepting the engineer's testimony as true, which the jury was entitled to do, the ditch existing prior to the institution of the present improvement was not a formidable obstacle to re-establishment of access to the 20 acres. Therefore, the owners

**2.** Apparently the topography is such that this particular place, in a hollow between steep cuts on the highway right-of-way, was the only spot at which a passageway into the 20 acres could feasibly be located.

really did have a means of access. They simply had no immediate reason for using it. The fact that it was there, and was available for use if and when needed, obviously was a factor in whatever value the 20 acres had. Now it is gone, and the converse is equally clear—the land cannot be as valuable as it was when it was accessible from the highway. So, the only question on this phase of the appeal is whether the physical obstruction or destruction of all access from the public highway to a piece of land is an allowable factor in determining the reduction in value for which the owner is entitled to compensation.

It is the law in this state that a landowner along a public road has "a right of reasonable access to the highway system." Commonwealth, Dept. of Highways v. Carlisle, Ky., 363 S.W.2d 104, 107 (1962). See also Department of Highways v. Jackson, Ky., 302 S.W.2d 373 (1957), in which it is pointed out that "damages resulting from the deprivation of such property right are to be measured by the depreciation in the value of the land." It cannot make any logical difference whether the right of reasonable access is destroyed by design or by accident, whether by closing roads, by prohibiting access, or by physical obstructions such as walls, fences, ditches, cuts and fills. The end result is the same. The access rights of the landowners in this case were just as effectively squelched as if the highway department had declared U. S. 460 a limited access highway and put up a wire fence along the right-of-way. We therefore hold that this deprivation was a proper factor in determining the allowable compensation.

The worst aspect of the case is the virtual certainty that the award reflects a duplication of damages for loss of frontage on the highway, as in Commonwealth, Dept. of Highways, v. McGeorge, Ky., 369 S.W.2d 126 (1963). In each of these two cases there was nothing to justify the amount awarded for the land taken except that it was road frontage. In both, for one reason or another the new frontage left after the taking was devoid of the value theretofore possessed by the frontage taken. In McGeorge the loss of ready access, which is the essence of frontage value, was the only basis given by the witnesses for reduction in value of the remaining land, and we held that since the award for the land taken obviously was based on frontage value there could not be an additional recovery for damage to the remainder.

It was suggested in Commonwealth, Dept. of Highways v. Finley, Ky., 371 S.W.2d 854, 856 (1963), that the premium value of a lot or strip taken from the front of a larger tract necessarily reflects and includes the resulting diminution in value of what is left behind it. This is no less true when the state is the purchaser and, like a private buyer, takes the property for a use that bars access between the road and the land left to the rear. The resulting situation of non-access to the road from the rear is bound to be an important factor in the price at which the intervening frontage will sell.

In this case the witnesses for the landowners stressed the loss of commercially usable frontage as the main factor tending to reduce the value of the remaining property. They advanced only two other relevant circumstances. One was the resulting inaccessability of the coal vein in the 20 acres. The other was that a corner of the new right-of-way line will be some 12 feet closer to the residence. Some of the coal already had been mined and the operation long since abandoned, and there was no proof that the remaining coal either is mineable or of any substantial contributory value to the land in which it lies. So far as the closer proximity of the right-of-way to the dwelling is concerned, none of the testimony would support an inference that the damage from that factor alone would approach $3,000.

These circumstances force the conclusion that the $3,000 award for damages to the remainder must have included, to a major degree, compensation for loss of frontage. That particular factor being also a necessary component of the $5,000 price awarded for the land taken, there is an improper duplication. Commonwealth, Dept. of Highways v. McGeorge, Ky., 369 S.W.2d 126 (1963).

In McGeorge we permitted the award for the land taken to stand and directed that there be no allowance for damages to the remainder. In this instance, however, there may actually have been some damage attributable to factors not covered in the award for the portion taken. Hence in fairness to the owners it is necessary that there be a new trial. Sherrod will apply.

Reversed with directions for a new trial.