**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**S. C. TABOR, single, Appellee.**

Court of Appeals of Kentucky.

April 29, 1966.

Robert Matthews, Atty. Gen., H. C. Smith, C. E. Skidmore, Frankfort, for appellant.

H. Rupert Wilhoit, Wilhoit & Wilhoit, Grayson, for appellee.

CLAY, Commissioner.

This is an appeal from a $70,000 judgment constituting a condemnation award

for land taken in the town of Olive Hill for the reconstruction of U.S. Highway 60. The Commonwealth poses the single question: "Is the verdict excessive for the reason there is insufficient evidence of probative value to support it?"

The property involved is a lot near the center of town, facing 291 feet on Main Street, with a retaining wall across the front ranging from three to ten feet above street level. The ground sloped upward to a very steep hill at the rear, which gave an effective useable depth of approximately 30 feet. On this lot was a 30-year-old stone and brick residence. It contained twelve rooms, one bath, and was without central heating. The residence took up about 91 feet of the frontage. Across the street is the principal commercial area of downtown Olive Hill.

The Commonwealth acquired a 26 foot strip across the front of this property to widen Main Street, but this took the residence (which was right on the street) and left such a narrow strip between the street and the steep hill behind that for practical purposes the remaining land was of little value. (All witnesses except one estimated an after value of $500 to $2000.) The controversy rages over the before valuation fixed by the landowner and his six supposedly expert witnesses.[1] The before values to which these witnesses testified ranged from $95,000 to $125,000.

We will not detail their testimony but will consider it from an overall standpoint. To begin with, almost all of them testified this property had a value of $300 per front foot for its entire length. This estimate was based on a commercial use of the property, which was generally agreed to be the best use. We can find no supporting reasons for such a market valuation, and other evidence introduced by the landowner demonstrates its gross extravagance.

All of the landowner's witnesses seemed completely oblivious of the fact that this property stood at an elevation above Main Street and that its useable depth was extremely shallow. While they emphasized the commercial value of this narrow strip, none ventured to state just how it could be commercially utilized. Obviously it could accommodate only small buildings on a plateau above Main Street, with no possibility of parking areas.

If the fanciful nature of these estimates is not readily apparent from the nature and limited usability of this land, it is apparent from the comparable sales to which the witnesses alluded. One such comparable sale was a level lot across Main Street which sold in 1957 for a little over $100 per front foot. This lot had a frontage of 100 feet and a depth of 75 feet. It is simply incomprehensible to us how this apparently comparable sale of commercial property, with at least double the depth of the lot here involved, could justify a front foot valuation of three times as much.

Two other sales appear in the evidence as having some comparability. They were sales made five years after the taking and *after the new highway had been constructed*. The sale prices indicated a value of approximately $300 per front foot. One of these lots was a corner lot with a depth of 80 feet. The other was a lot 90 feet deep, with commercial improvements on it. Apparently these lots were at street level. On the face of it, considering the time of these sales, the nature of these properties, the elevation, the depth, and the improvements, it seems to us a matter of common knowledge that the lot here involved could not have the same value, or anything like it. Disregarding all other discrepancies, to say that a commercial lot with a depth of 30 feet is as valuable as one with a depth of 80 or 90 feet is simply incredible and contrary to reason.

---

1. None were engaged in the real estate business. Their respective occupations were: Funeral director, owner of a variety store, oil distributor, retail merchant, grocery and dry goods merchant, supermarket management.

It is quite edifying to examine the case of Commonwealth, Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472. This involved a lot 60 feet deep, fronting 242 feet on Main Street in Olive Hill. *It adjoined the property we are here considering.* The differences in the two lots were: (1) the Tyree lot contained valuable commercial buildings, and (2) it had about twice the usable depth. The state condemned a strip approximately 25 feet wide. It is rather amazing to note that several of the witnesses who testified in both cases were very positive that after the taking of the Tyree strip, the remaining land, *with a 242 foot frontage and a 30 foot depth,* had *practically no value at all.*[2] We think further comment is unnecessary to illustrate the character of the valuation testimony in the present case.

■ Even assuming there was some basis to support the $300 per front foot appraisals on the lot here involved, we find the witnesses were not content to stand on this commercial value. They apparently considered it proper to add to it a rather stupendous separate item for the value of the residence. They *added* to the front foot valuation up to $50,000 for the house. We do not need to examine the question of the allegedly inflated values placed on this house, nor is it necessary to belabor the question of whether the house was, from the standpoint of commercial development, a complete white elephant with no value at all.[3] It is sufficient to say that it is obviously doubling the damages to fix a commercial front foot valuation and add to it the full residential value of the property. It is similar to the duplications condemned in Commonwealth, Dept. of Highways v. Raybourne, Ky., 364 S.W.2d 914, and Commonwealth, Dept. of Highways v. McGeorge, Ky., 369 S.W.2d 126.

■ In Commonwealth, Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472, we accepted appraisals which added the value of improvements to the value of the land. But *these improvements were commercial buildings.* Clearly commercial and residential uses of the same area are incompatible and separate valuations cannot be based upon each of the different uses at the same time and added together. See Commonwealth, Dept. of Highways v. Burden, Ky., 388 S.W.2d 577; United States v. Buhler, 5 Cir., 305 F.2d 319; Nichols on Eminent Domain, Third Edition, Volume 4, section 12.314 (page 171). Of course a small lot such as this possibly could be used for both purposes, but in that event, for valuation purposes, account must be taken of the impairment of the value of the residence by reason of the adjoining commercial use, and certainly its frontage may not be given a commercial value.

■ Without examining the evidence further, it is our firm conviction that the valuations given by the landowner's witnesses were so patently extravagant, so lacking in justification, so inconsistent with comparable sales, and so infused with the allowance of double damages, as to be without probative value. See Commonwealth, Dept. of Highways v. Lyons, Ky., 364 S.W. 2d 336; and Commonwealth, Dept. of Highways v. Gearhart, Ky., 383 S.W.2d 922. While the verdict indicates the jury markedly discounted this testimony, it was so lacking in substance that the $70,000 award was without evidentiary support.

The judgment is reversed.

2. Though some of the witnesses in that case used substantially the italicized language, the figures ranged from $2500 to $10,000.

3. We do not minimize the fact that this was a very fine house as a home *for the owner,* and he probably would not have voluntarily parted with it at any price, but its *marketability* involves an entirely different question.